[Crim. No. 3807. Second Dist., Div. One. Oct. 24, 1944.]

THE PEOPLE, Respondent, v. HATTIE M. CROOMS, Appellant.

Sylvester Isonberg for Appellant.

Robert W. Kenny, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

DORAN, J.—Appellant, by information, was charged in one count with violation of section 244 of the Penal Code, and in a second count with the commission of mayhem. The first count of the information charged that appellant "did will-

fully, unlawfully and feloniously and maliciously place and throw upon the person of one Wesley Brewer a certain caustic chemical, to wit, lye, with the intent then and there to injure the flesh and disfigure the body of the said Wesley Brewer.'' The second count charged that appellant ''did willfully, unlawfully, feloniously and maliciously disable, disfigure and render useless the eye of Wesley Brewer, by then and there unlawfully and maliciously throwing a caustic chemical, to wit, lye, upon the eye of the said Wesley Brewer.'' After a trial by jury upon the information, the jury returned a verdict of ''Guilty'' as to the second count, but failed to agree as to the first count and as to that count the trial judge declared a mistrial. The appeal herein is from the judgment of conviction under count two of the information.

It appears from the record that the basis of the prosecution herein was the injury received by the complaining witness, caused by a solution of lye being thrown or splashed in his face while he was present with appellant in her living quarters. The solution so impaired complainant's sight as to reduce vision in the right eye to light perception only, and to reduce to only 1 per cent the vision in the left eye. According to the testimony of the complaining witness, given at the trial, appellant had thrown the lye solution into complainant's face while complainant was seated on a chair in appellant's bedroom. According to the testimony of appellant the solution had accidentally splashed in complainant's face when complainant had grabbed appellant and a struggle had ensued. It appears that complainant had previously been living with appellant in her quarters, but had moved out; and on the day in question complainant had visited appellant, according to complainant's testimony, to obtain his ration books from appellant. Testimony of a forensic chemist employed by the police department, who had examined the premises in question three days after complainant had suffered his injury, tends to corroborate complainant's testimony that the solution was thrown at complainant. The testimony of the forensic chemist was with relation to the location and presence of stains and spots on the walls, floors and articles in appellant's apartment, as the chemist had observed them on the date the premises were examined.

Appellant contends that the evidence is insufficient to sustain the judgment, that the trial court committed preju-

dicial error in giving certain instructions and in refusing to give certain other instructions requested by appellant, and that the judgment of conviction upon the second count of the information is inconsistent with the failure of the jury to agree on a verdict as to the first count.

The argument of appellant as to the insufficiency of the evidence is based upon the contention that the testimony of the complaining witness was impeached and the expert testimony of the forensic chemist was admitted without sufficient proof of qualifications as an expert and without proper foundation. █ Appellant contends that the complaining witness stood impeached upon four grounds, viz.: Conviction of a felony; contradiction of his previous testimony given at appellant's preliminary hearing; contradictory statements made to an attorney for the defense; and claimed immorality with appellant. In this connection, the record reveals that the testimony of the complaining witness was in no sense improbable; if anything, the testimony of the complaining witness was more consistent with the surrounding circumstances, revealed by the evidence, than was the testimony of appellant. Under such circumstances, it is well settled that the credibility of the witness is a question for the jury. (*People* v. *Sutter,* 125 Cal.App. 28 [13 P.2d 745] ; *People* v. *Slater,* 199 Cal. 357 [249 P. 177] ; *People* v. *Rogers,* 111 Cal.App. 372 [295 P. 521] ; *People* v. *Vejar,* 93 Cal.App. 259 [269 P. 671] ; *People* v. *Hardwick,* 204 Cal. 582 [269 P. 427, 59 A.L.R. 1480] ; *Goodwin* v. *Robinson,* 20 Cal.App.2d 283 [66 P.2d 1257] ; *People* v. *Loehr,* 35 Cal.App.2d 1 [94 P.2d 390] ; *Smith* v. *Schwartz,* 35 Cal.App.2d 659 [96 P.2d 816] ; *People* v. *Ross,* 46 Cal.App.2d 385 [116 P.2d 81], and other authorities too numerous to mention.

As to the testimony of the forensic chemist, appellant contends that ''The objection of defense counsel to the State's exhibits 1 to 12 (sic) should have been sustained for the reasons (1) that police officer and forensic chemist, Leland V. Jones, testifying as an expert, admitted that he had never tested the source of lye water as contended by the prosecution, prior to August 27, 1943, when found in places and on articles or objects as represented by the People's exhibits 1 to 10, (2) there was no showing that the objects and scenes as represented by the State's exhibits were the same on August 27, 1943, the date on which Mr. Jones visited appellant's home

at 2011 Hooper Avenue, as they were on August 24, 1943, the date of the alleged occurrence; and (3) no showing is made that this splashing of the lye water on the complainant's face did not result from the spontaneous scrap or scuffle between the complainant and the appellant as described in the testimony of these parties, as given by the former at appellant's preliminary trial, and by the latter at the trial in the Superior Court, which actually proved the injury to this complainant to be accidental."

Respondent points out that the only objection made to the admission of the exhibits in question, was that they were not properly identified. By appropriate reference to the record, respondent successfully refutes any such contention. As to the photographs of the premises and the objects therein, "It is for the trial court to determine, from the evidence before it, whether a photograph offered is a correct representation of the object or scene in question, and the ruling will be sustained on appeal unless it is apparent that there has been an abuse of discretion." (*Diller* v. *Northern Cal. Power Co.*, 162 Cal. 531, at 538 [123 P. 359, Ann.Cas. 1913D 908].) As in the case last cited, the preliminary proof of the accuracy of the photographs here in question was sufficient to justify their admission. As to the qualifications of the expert witness Jones, the record reveals a sufficient foundation for the admission of his testimony as an expert upon the question of the point of origin of liquids, determined from an investigation of the spots or marks made by liquids after they have come to rest. While it is true that the experience of this witness in such cases appears from his testimony to have been mostly with blood, the witness testified that since the preliminary examination in the present case the witness had performed a few experiments with sodium hydroxide. The contentions of appellant regarding the testimony of the forensic chemist as an expert are directed rather to the weight of the evidence thus adduced than to the admissibility thereof. Moreover, it does not appear from the record than any objection was interposed to the admission of the testimony of the witness as an expert.

As to whether the objects and scenes shown in the photographs in evidence were the same on the date the pictures were taken as they were on August 24, 1943, is also a question directed to the weight rather than to the admissibility of the evidence. It has already been indicated above that there was suf-

ficient evidence to present a question of fact to the jury as to the guilt or innocence of appellant and to sustain the verdict of the jury. ■ Appellant's contention that there was no showing made that the splashing of the lye water was not the result of an accident is not well founded.

■ Appellant has admitted that she was in error in stating that her bond was forfeited during the trial. The record reveals that after the defendant rested and the cause was argued the defendant was remanded to custody and her bond was exonerated. No prejudice can be claimed as the result of such action on the part of the trial judge. Section 1129 of the Penal Code provides: "When a defendant who has given bail appears for trial, the court may, in its discretion, at any time after his appearance for trial, order him to be committed to the custody of the proper officer of the county, to abide the judgment or further order of the court, and he must be committed and held in custody accordingly."

■ Appellant complains of "the trial court's permission of a long harangue in the form of testimony by the complainant as to why he changed his testimony, thus giving him an opportunity to picture appellant as a demon, making threats against his life if he testified to the alleged truth." It appears that at the preliminary examination the complaining witness had given testimony indicating that his injuries were the result of an accident caused by a scuffle with appellant. This was the nature of the testimony of appellant given at the trial. At the trial the complaining witness, upon redirect examination, explained his testimony given at the preliminary examination by stating that he had so testified because of threats made to him by appellant. This was proper, and appellant may not complain if testimony as to such threats may have tended to place her in an unfavorable light with the jury. Since an attempt had been made to impeach the testimony of the complaining witness by introducing previous statements inconsistent with his testimony given at the trial, it was necessary to allow the complaining witness to explain the inconsistent statements or testimony (Code Civ. Proc., § 2052).

■ In his argument to the jury, the prosecutor stated, "Now, ladies and gentlemen, everybody knows that when you put some lye into a liquid it dissolves readily, and if you proportion it and you put a large percentage of lye in the liquid

it will cause the matter to boil by reason of the chemical action that takes place in giving out heat . . . . '' These remarks were apparently made for the purpose of disputing appellant's testimony that she had a pan of lye heating on the stove. Appellant had testified that she had placed a pan of lye solution on the stove to heat, for the purpose of cleaning the commode in the bathroom; that as she was looking for the ration books of the complaining witness she heard the solution sizzling, and she went to the kitchen, took the pan off the stove and started with it to the bathroom; that on her way to the bathroom with the pan of lye solution the complaining witness grabbed her, pulled her into the bedroom, and a struggle ensued which resulted in the splashing of the solution in the face of the complaining witness. Appellant contends that the remarks of the prosecutor in question were improper and that the court committed prejudicial error in denying appellant's motion to strike the same and to admonish the jury to disregard the remarks.

Insofar as the charge of mayhem was concerned, it was immaterial whether appellant had taken the pan of lye off the stove or had dumped the lye into a pan of water immediately before the alleged act was committed. Moreover, the remarks, of which appellant complains, did not necessarily refute or tend to refute appellant's testimony that she had placed a pan of lye solution on the stove to heat. Notwithstanding the fact, if it is a fact, that a quantity of lye placed in water causes the water to boil up or effervesce, the jury may still have believed that appellant placed such a solution on the stove to heat. Upon the record presented, it cannot be said that the remarks in question, if improper argument, were such as would tend to influence the jury's deliberations regarding the guilt or innocence of appellant with respect to the charge of which she was convicted. It cannot be said, therefore, that such remarks were prejudicial.

The contentions of appellant regarding the instructions given by the court are not of sufficient merit to warrant a detailed discussion. It is sufficient to state, as respondent points out, that the instructions given, when taken as a whole, and not as isolated statements, correctly and completely instructed the jury as to the law applicable to the set of facts shown by the evidence, and were in no sense argumentative.

■ Appellant complains of the refusal of the court to give

an instruction requested by appellant to the effect that if the jury found that the act in question was committed by accident and misfortune in doing a lawful act by lawful means then the jury must find the defendant not guilty. The substance of the requested instruction was implicit in the instructions given by the court; and no prejudice can be said to have resulted from the refusal to give the instruction requested. (*People* v. *Oppenheimer,* 156 Cal. 733, at p. 745 [106 P. 74].) In this connection, it should be pointed out that the court instructed the jury in effect that if the jury found that the act complained of was done unlawfully and maliciously the defendant was guilty of mayhem. The court also gave an instruction containing the legal definition of the words "malice" and "maliciously."

 There is no inconsistency between the verdict on the second count of the information and the failure of the jury to agree on a verdict on the first count. The first count charged a violation of section 244 of the Penal Code, which requires a specific intent to injure the flesh or disfigure the body of a person. The basis of the second count was the commission of mayhem, which crime, as defined in section 203 of the Penal Code, does not require a specific intent, since, under the definition there given, any person who unlawfully and maliciously commits the acts proscribed is guilty of mayhem. In this connection, it is immaterial that the information stated the second count as a "different statement of the same offense as set forth in Count I." Obviously, the two counts stated distinct offenses. Furthermore, the situation here presented is not one of inconsistent verdicts. There was no verdict as to the first count of the information. When there has been a failure of trial by disagreement of the jury, the status is the same as if there had been no trial. (*People* v. *Messerly,* 46 Cal.App. 2d 718 [116 P.2d 781].)

The judgment is affirmed.

York, P. J., and White, J., concurred.