[Crim. No. 7749.   In Bank.   May 21, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. EARL CLAR-
ENCE SEARS, Defendant and Appellant.

Edward D. Nino, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Albert W. Harris, Jr., and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

TOBRINER, J.—The jury found defendant guilty of the first degree murder of his stepdaughter Elizabeth Olives, the attempted murder of his estranged wife Clara Sears and the attempted murder of his mother-in-law Frances Montijo. As to the first degree murder conviction, the jury fixed the penalty at death. This appeal comes to us automatically under Penal Code section 1239, subdivision (b).

For the reasons stated below we hold that the trial court

erred in admitting into evidence incriminating statements elicited from defendant without his either being advised of his rights to counsel and to remain silent or otherwise having waived those rights., For guidance of the court on retrial we set forth our reasons for concluding that although the evidence does not warrant an instruction to the jury as to felony murder mayhem, it does support an instruction as to felony murder burglary. We further hold that the trial court did not abuse its discretion in refusing to call Robert Kjaerbye as a witness for the court. We do not discuss defendant's contentions that the prosecutor committed prejudicial misconduct in offering into evidence an inadmissible extrajudicial statement of Robert Kjaerbye and in commenting on his failure to testify because we doubt that these factual situations will recur.

With reference to the penalty phase of the trial we also point out that the rendition of instructions identical to those condemned in *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal. Rptr. 201, 388 P.2d 33], coupled with the presentation of certain evidence and arguments to the jury necessarily worked prejudicial error. (*People* v. *Hines* (1964) 61 Cal.2d 164 [37 Cal.Rptr. 622, 390 P.2d 398].) We do not, however, discuss defendant's other contentions relating to the penalty phase of the trial because of the improbability that these issues will arise in a subsequent penalty trial.

Defendant married Clara Sears in 1960. Mrs. Sears had three children from previous marriages, the youngest being Elizabeth Olives, the murder victim. Approximately three weeks prior to May 16, 1963, the defendant moved from the family residence in Monte Vista to a hotel in San Jose.

After leaving his place of employment on the afternoon of May 16, 1963, defendant went to a neighborhood tavern where he remained until 7:30 p.m. drinking beer with friends. After returning to his hotel, defendant met Robert Kjaerbye, and the two men had dinner in a nearby restaurant. They then went to a bar but left after 20 minutes because defendant wanted to drive to the house in Monte Vista to pick up his mail.

The two men entered the house through the unlocked front door. Defendant had a piece of reinforced steel pipe under his shirt. Clara and Elizabeth were already in bed. Defendant told Clara that he wanted to talk with her. Although she complained about the lateness of the hour, Clara joined defendant in the kitchen while Kjaerbye stayed in the living

room. Noticing that the floor was cold, Clara returned to the bedroom to put on her robe and slippers. As she reentered the kitchen, defendant grabbed the collar of her robe and said, "You don't want me to come back to you." He pulled out the steel pipe and struck her about the head and face. Elizabeth came into the living room and shouted at defendant to let her mother alone. Clara tried to place herself between defendant and Elizabeth, but defendant grabbed the little girl and struck Clara several times, rendering her unconscious.

Frances Montijo, who lived next door, heard the noise from her daughter's home and decided to investigate. As she approached the Sears' residence she encountered Kjaerbye leaving the house and asked him what was happening inside. He responded that he did not know.

As Frances entered, she saw the defendant struggling with Elizabeth on the floor. When defendant saw Frances, he attacked her with a knife, cutting her face and neck, and threw her into a chair, pressing the steel pipe against her chest and throat. Frances cut her hand in a struggle for possession of the knife. She then effected her escape and ran to the nearby home of her son-in-law Patrick to get help.

When Patrick entered he saw defendant standing over the prone body of Clara with a barbecue fork in his upraised hand. Patrick also observed that Elizabeth was lying on the floor in a pool of blood. When Patrick asked defendant what he was doing, defendant lunged at him with the fork. Patrick wrestled with defendant, chasing him out of the house and down the driveway. Defendant then ran to his car and drove away.

Elizabeth died as a result of a knife wound which punctured her jugular vein. She also suffered a scalp wound and several lacerations to her face. Clara Sears suffered a fractured jaw and arm. Frances Montijo received several cuts and wounds to her face and hands.

We turn, first, to the issue arising from the introduction of a statement that defendant gave during his interrogation by the police without being advised of his right to counsel or his right to remain silent, in the absence of a showing that he did not otherwise waive those rights.

At the time the defendant rendered the statement, the investigation had reached the accusatory or critical stage. As we have stated in *People* v. *Stewart* (1965) *ante,* pp. 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97], "Whenever

. . . the officers have arrested the suspect and the officers have undertaken a process of interrogations that lends itself to eliciting incriminating statements, the accusatory or critical stage has been reached and the suspect is entitled to counsel.''

As to the requirement for arrest, we note that the police arrested defendant at 10:42 a.m. on May 17, 1963, transported him to the Santa Clara police department and delivered him to the sheriff's department. As to the requirement regarding elicitation of incriminating statements, we have, pursuant to the *Stewart* formula, weighed all relevant factors such as ''the length of the interrogation, the place and time of the interrogation, the nature of the questions, and the conduct of the police and all other relevant circumstances'' (*People* v. *Stewart* (1965) *ante,* pp. 571, 579 [43 Cal.Rptr. 201, 400 P.2d 97]; we have concluded for the reasons set forth below that such stage had been reached.

Thus the police interrogated defendant for approximately 45 minutes; the recorded statement, as read into the record, comprises 50 pages of reporter's transcript. Since the investigating officers had previously interviewed witnesses to the murder and assaults, the questions posed to defendant were designed to gather as many details about the crimes as defendant could supply. The types of questions propounded by the police were clearly intended to educe incriminating statements. For example, the police officers queried defendant as to how many times he hit his wife, what type of weapon he used, how many times he hit his mother-in-law, how many times he hit the child and where he hit her. They asked such questions as to whether defendant used the knife on the young girl; whether he left the knife in the child or pulled it out; whether he used the knife on the child after she had been knocked down. They further asked the defendant where he had obtained the knife.

Since the police placed defendant under arrest and engaged in a process of interrogations that lent itself to eliciting incriminating statements, they should have advised him of his rights to counsel and to remain silent. Yet nothing in the record indicates that the police did so advise him or that defendant knew or waived such rights. We cannot presume in the face of a silent record that the police informed defendant of his rights to counsel and to remain silent. (*People* v. *Stewart* (1965) *ante,* pp. 571, 580, 581 [43 Cal.Rptr. 201, 400 P.2d 97]; see *Carnley* v. *Cochran* (1962) 369 U.S. 506 [82 S.Ct. 884, 8 L.Ed.2d 1253].) The

statement, therefore, should not have been admitted into evidence. (*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People* v. *Dorado* (1965) *ante,* pp. 338 [42 Cal.Rptr. 169, 398 P.2d 361].)

Inasmuch as defendant's statement constituted a confession, its erroneous admission cannot be characterized as harmless error. The Attorney General contends that the statement "added nothing to the prosecution case which had been completely established by the physical evidence and the uncontradicted testimony of three eyewitnesses." We have held, however, that the erroneous introduction of a confession is prejudicial per se. (*People* v. *Dorado* (1965) *ante,* pp. 338, 356 [42 Cal.Rptr. 169, 398 P.2d 361]; *People* v. *Matteson* (1964) 61 Cal.2d 466, 469-470 [39 Cal.Rptr. 1, 393 P.2d 161].)

Defendant's statement constituted a confession of first degree murder. From his account of the evening's events, the jury could properly have inferred premeditation and deliberation. In his statement defendant admitted entering the house through an unlocked door, concealing under his shirt a steel pipe that he intended to use to scare his wife. After entering, according to his statement, he hit his wife several times with the pipe and struck the little girl on the head with the same instrument, knocking her to the floor. After examining the child to see how badly she was hurt, defendant stated, he struck his wife a few more times, rendering her unconscious. Defendant uttered the further significant statement that he then went into the kitchen, got a knife from a drawer and returned to the living room where he twice plunged the knife into the little girl's throat. Defendant also admitted assaulting his mother-in-law and wrestling with his brother-in-law over possession of the barbecue fork.

Premeditation and deliberation may be shown by circumstantial evidence. (*People* v. *Robillard* (1960) 55 Cal.2d 88, 95 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Werner* (1952) 111 Cal.App.2d 264, 271 [244 P.2d 476].) Defendant's admission that he went into the kitchen, removed a knife from the drawer, returned to the living room and used the knife to stab the little girl affords circumstantial evidence that he deliberately and premeditatedly inflicted the fatal wounds. Defendant's statement thus contains an admission of all of the elements necessary to support a conviction of first degree murder. Since defendant's state-

ment constitutes a full confession of the crime charged its erroneous introduction necessarily worked prejudicial error.

Turning to defendant's second contention, his objection to the instruction as to felony murder mayhem, we hold that in the absence of a showing that the defendant specifically intended to commit mayhem, the court should not have instructed on felony murder mayhem. Penal Code section 203 provides: "Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear, or lip, is guilty of mayhem." Penal Code section 189 states, "All murder ... committed in the *perpetration* or *attempt to perpetrate* arson, rape, robbery, burglary, *mayhem* ... is murder of the first degree...." (Italics added.)

The Legislature has decreed that any person who undertakes to commit any of the enumerated felonies will be guilty of first degree murder if such undertaking results in the loss of a human life. This dictate emanates from the extreme risk of harm inherent in the felonious conduct involved. Yet, in order to establish a defendant's guilt of first degree murder on the theory that he committed the killing during the perpetration of one of the enumerated felonies, the prosecution must prove that he harbored the specific intent to commit one of such enumerated felonies. (*People* v. *Craig* (1957) 49 Cal.2d 313, 318 [316 P.2d 947]; *People* v. *Cheary* (1957) 48 Cal.2d 301, 310 [309 P.2d 431]; *People* v. *Coefield* (1951) 37 Cal.2d 865, 868-869 [236 P.2d 570].)

We recognize that some decisions have held that a specific intent to inflict the injuries proscribed in Penal Code section 203 does not constitute a requisite for a conviction of mayhem. In *People* v. *Nunes* (1920) 47 Cal.App. 346, 349 [190 P. 486], the defendant slugged the victim in the eye. The blow shattered the glasses that the victim wore at the time; a fragment pierced the eye causing a loss of sight. In *People* v. *Crooms* (1944) 66 Cal.App.2d 491, 499 [152 P.2d 533], the defendant threw lye on the victim. In neither case did the court require proof of a specific intent to maim; a malicious and unlawful commission of an aggressive act which resulted in an injury enumerated in section 203 sufficed. (See also *People* v. *McWilliams* (1948) 87 Cal.App.2d 550 [197 P.2d 216]; *People* v. *Long* (1945) 70 Cal.App.2d 470 [161 P.2d 278].) These cases apparently rest upon an interpretation of

*People* v. *Wright* (1892) 93 Cal. 564, 566-567 [29 P. 240], which held merely that premeditation need not be proven; the intent could be *presumed* from the act itself.

Even assuming the propriety of the above holdings, a distinction may be drawn between the showing of intent necessary to support a conviction of felony murder mayhem and the showing of intent necessary to uphold a conviction of mayhem. ▮ Under the felony murder doctrine, the intent required for a conviction of murder is imported from the specific intent to commit the concomitant felony. In the above cases the courts, in order to sustain the convictions of mayhem, presumed the intent from the acts or types of injuries sustained. ▮ But to presume an intent to maim from the act or type of injury inflicted, and then to transfer such ''presumed intent'' to support a felony murder conviction is artificially to extend the fiction. We cannot compound such fictions. The doctrine of felony murder, therefore, must be limited to those cases in which an intent to commit the felony can be shown from the evidence.

▮ In the instant case the evidence discloses that defendant struck Elizabeth several times with a steel pipe; one of the blows resulted in a laceration of the lip; another, a laceration of the nose. But such evidence does no more than indicate an indiscriminate attack; it does not support the premise that defendant specifically intended to maim his victim. In the absence of such a showing of specific intent to commit mayhem, the court should not give the jury an instruction on felony murder mayhem.

▮ With reference to the felony murder burglary instruction, however, the record contains evidence from which the jury could have found that defendant entered the house with the intent to commit a felonious assault upon his wife.

▮ As we stated in *People* v. *Morlock* (1956) 46 Cal.2d 141, 146 [292 P.2d 897], ''burglary is committed when a person enters any house 'with intent to commit ... any felony.' ...'' (Pen. Code, § 459.) Section 245 of the Penal Code provides that a person is guilty of a felony when he ''commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury....'' (See also *People* v. *Mason* (1960) 54 Cal.2d 164, 168-169 [4 Cal.Rptr. 841, 351 P.2d 1025].)

▮ Although the jury could not properly infer that defendant intended to commit a felonious assault merely because such an attack took place, the fact that he had placed

a piece of reinforced steel pipe under his shirt substantiates a finding that he entered the house with the requisite intent. (*People* v. *Clifton* (1957) 148 Cal.App.2d 276 [306 P.2d 545].) Defendant is no less guilty because Elizabeth, rather than the intended victim, Clara, died. (*People* v. *Morlock*, *supra*, at p. 146.) Since the jury therefore could justifiably infer from the evidence that defendant armed himself with a deadly weapon and entered the house with the intent to assault Clara, the trial court properly instructed the jury on felony murder burglary.

We reject defendant's contention that the court should not have given the burglary instruction because defendant, as Clara's husband, had a right to enter the family home. One who enters a room or building with the intent to commit a felony is guilty of burglary even though permission to enter has been extended to him personally or as a member of the public. (*People* v. *Deptula* (1962) 52 Cal.2d 225, 228 [23 Cal.Rptr. 366, 373 P.2d 430].) The entry need not constitute a trespass. (*People* v. *Deptula*, *supra*, at p. 228; *People* v. *Wilson* (1958) 160 Cal.App.2d 606, 608 [325 P.2d 106]; *People* v. *Garrow* (1955) 130 Cal.App.2d 75, 83 [278 P.2d 475].) Moreover, since defendant had moved out of the family home three weeks prior to the crime, he could claim no right to enter the residence of another without permission. Even if we assume that defendant could properly enter the house for a lawful purpose (cf. Civ. Code, § 157), such an entry still constitutes burglary if accomplished with the intent to commit a felonious assault within it.

Nor do we agree that the trial court abused its discretion in failing to call Robert J. Kjaerbye as a witness for the court. Although Kjaerbye had been subpoenaed as a witness for the prosecution, the district attorney informed the court and defense counsel that due to Kjaerbye's propensity to narrate differing accounts of the events which transpired on the evening of May 16, 1963, he did not feel that Kjaerbye would be a trustworthy witness and therefore he had decided not to call him as a witness. Although defense counsel stated that he believed that Kjaerbye's testimony would be untrustworthy, that he might tell 15 different stories, and that he was a liar, he suggested that the court call him as its own witness and allow both parties to cross-examine him.

Recognizing that he could exercise his discretion in the matter, the trial judge applied such discretion and correctly determined that it would be unwise to call a witness

whom both sides deemed to be untrustworthy. (*In re Imbler* (1963) 60 Cal.2d 554, 560 [35 Cal.Rptr. 293, 387 P.2d 6].)

Finding that the trial court erroneously admitted defendant's confession, obtained without his either being advised of his rights to counsel or to remain silent, or his otherwise having waived those rights, we must reverse the judgment and remand for a new trial.

The judgment is reversed.

Traynor, C. J., Peters, J., and Peek, J., concurred.

DOOLING, J.*—I concur but reject the idea that a man may burglarize his own home. The gist of burglary is the violation of the owner's right to exclusive possession. I don't think that the Legislature by the omission of a phrase from the definition intended to change this long established common law rule.

SCHAUER, J.,* Dissenting.—The majority opinion recites evidence which, entirely independent of any incriminating admission, amply supports the jury's verdict and the judgment. The opinion suggests no tenable basis for doubting that the defendant is guilty as found by the jury; furthermore, it points to no evidence in the record which would support a finding that the verdict results from, or works, a miscarriage of justice.

The records in *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33], and *People* v. *Hines* (1964) 61 Cal.2d 164 [37 Cal.Rptr. 622, 390 P.2d 398], cited by the majority, are not pertinent to the record here; hence, the decisions in those cases are irrelevant. In the circumstances of this case, section 4½, article VI, of the California Constitution, requires that the judgment be affirmed.

McComb, J., concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.