[Crim. No. 5045.   First Dist., Div. Two.   June 20, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. ERNEST VIGIL, Defendant and Appellant.

Howard Jameson, under appointment by the District Court of Appeal, and Condon, Dolgin & Kully for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Jay S. Linderman, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant was found guilty by separate jury verdicts of assault with a deadly weapon (Pen. Code, § 245) and mayhem (Pen. Code, § 203). Based upon the rule against multiple punishment (Pen. Code, § 654) for "one indivisible transaction" (*Neal* v. *State of California*, 55 Cal.2d 11, 19-20 [9 Cal.Rptr. 607, 357 P.2d 839]), the trial court sentenced only on the mayhem conviction and granted a new trial as to the assault conviction. Following such sentence (to state prison) defendant appeals. The facts which follow are stated in the light most favorable to the prosecution.

Defendant and Esther were married on February 9, 1947 and divorced on May 29, 1962. On July 4, 1964 Esther was living in Oakland with their three children, the oldest of whom was 16-year-old daughter Laverne. Defendant at that time was employed in Alaska as a butcher.

Defendant was informed over the telephone by his brother and by Laverne that his former wife was associating with another man. This information caused defendant to leave Alaska by plane on the evening of July 3, 1964. He arrived in Oakland the next morning and went by taxi to Esther's residence, arriving there about 5 a.m. He looked through Esther's bedroom window and saw her in bed with the victim, one Arnold.

Laverne testified that she was awakened by a pounding at the door; that she observed her father, the defendant, outside of the house at her mother's bedroom window; that upon defendant's request she opened the front door; that she noticed an opened suitcase lying on the front porch; that defendant told her "to stay out of the way" and he then proceeded to her mother's bedroom with a large butcher knife, approximately 15 inches long, in his hand; that she saw defendant swing at Arnold with the knife and cut both of his hands three or four times; that defendant was then saying that "He was going to make him [Arnold] into steaks"; that when Arnold got up and tried to go to the door defendant made a large cut on his left thigh; that she then left and went to get her uncle, defendant's brother, who lived next door.

Esther testified that she had been in bed with Arnold but that when Laverne told her that somebody was outside the windows, she got up and went into Laverne's bedroom; that when defendant entered the front door he "sort of mumbled" that, "Well, now you are going to get it."

Arnold testified about defendant saying that "I will make steaks out of you" and that, after the attack was over and

defendant was applying a tourniquet to his leg, defendant asked him, ''Was it worth it?''

Defendant testified that, before entering the house, he looked through the window of Esther's bedroom and saw her and Arnold engaged in sexual intercourse; that he got the knife out of the suitcase to protect himself. (The jury obviously rejected self-defense.)

Arnold's attending physician testified that he doubted that defendant would ever be restored to the full use of either hand, particularly the left.

Defendant's sole contention on appeal is that the offense of mayhem requires a specific intent to inflict the type of injury described in Penal Code section 203.

That section provides in pertinent part that ''Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, . . . is guilty of mayhem.'' Defendant concedes in his brief that ''The record does show a malicious attack upon Arnold resulting in the injuries spelled out in section 203.''

The cases have uniformly held that mayhem, as a separate offense, does not require a specific intent to maim or disfigure. (*People* v. *Wright*, 93 Cal. 564, 566 [29 P. 240]; *People* v. *Nunes*, 47 Cal.App. 346, 348 [190 P. 486]; *People* v. *Crooms*, 66 Cal.App.2d 491, 499 [152 P.2d 533]; 1 Witkin, Cal. Crimes (1963) p. 262.) The court in the above cases presumed the intent from the acts or types of injuries sustained. (*People* v. *Sears*, 62 Cal.2d 737, 745 [44 Cal.Rptr. 330, 401 P.2d 938].)

In felony-murder mayhem[1] cases, however, it is necessary to prove that the defendant had a specific intent to commit mayhem. (*People* v. *Sears, supra; People* v. *Anderson*, 63 Cal.2d 351, 358 [46 Cal.Rptr. 763, 406 P.2d 43].)

In *Sears*, Justice Tobriner explained the reason for the distinction as follows: ''We recognize that some decisions have held that a specific intent to inflict the injuries proscribed in Penal Code section 203 does not constitute a requisite for a conviction of mayhem. [Citing and discussing *Nunes, supra, Crooms, supra, Wright, supra, People* v. *McWilliams*, 87 Cal. App.2d 550 [197 P.2d 216], and *People* v. *Long*, 70 Cal.App. 2d 470 [161 P.2d 278].]

''Even assuming the propriety of the above holdings, a distinction may be drawn between the showing of intent neces-

---

[1] Penal Code section 189 states, ''All murder . . . committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem . . . is murder of the first degree . . . .''

sary to support a conviction of felony murder mayhem and the showing of intent necessary to uphold a conviction of mayhem. Under the felony murder doctrine, the intent required for a conviction of murder is imported from the specific intent to commit the concomitant felony. In the above cases the courts, in order to sustain the convictions of mayhem, presumed the intent from the acts or types of injuries sustained. But to presume an intent to maim from the act or type of injury inflicted, and then to transfer such 'presumed intent' to support a felony murder conviction is artificially to extend the fiction. We cannot compound such fictions. The doctrine of felony murder, therefore, must be limited to those cases in which an intent to commit the felony can be shown from the evidence.'' (Pp. 744-745.)

*Sears* and *Anderson* demonstrate the general rule that where a killing is murder of the first degree *by force of Penal Code section 189,* the specific intent to commit one of the felonies enumerated therein must be proved. (1 Witkin, Cal. Crimes (1963) p. 283.)

Here we are concerned *only* with the offense of mayhem as proscribed by Penal Code section 203. Under the authority of the decided cases we hold that it was not error for the court to instruct the jury as follows: ''If a person unlawfully and maliciously assaults another, not with the specific intent to commit the crime of mayhem but the blow so delivered results in a loss or disfigurement of a member of the body of the assaulted person or renders such member useless, the crime is nevertheless mayhem. It is not necessary that the accused shall have intended the particular injury suffered by the victim.''

It follows that, under our concept of the law, we need not discuss the validity of defendant's further contention that the evidence is insufficient to establish a specific intent by him to commit mayhem upon the victim.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 17, 1966.