Filed 6/27/13  In re Alejandra F. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re ALEJANDRA F. et al., Persons Coming Under the Juvenile Court Law. | B240564 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK82522) |
| Plaintiff and Respondent, | |
| v. | |
| FERNANDO V., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Albert Garcia, Juvenile Court Referee.  (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Paul Kujawsky for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Fernando V. (father) appeals the termination of his parental rights with respect to Alejandra F. (Alejandra) and R. V. (R.). After father's appointed counsel filed a "no issues" brief pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835, father's private counsel filed a brief. Father contends that he received ineffective assistance of counsel at the Welfare and Institutions Code[1] section 366.26[2] hearing when his attorney failed to inform the juvenile court of the outcome of the criminal case against him. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Alejandra was born in June 1995 and R. was born in February 2004. Alejandra and R. lived alone with their father in a one-bedroom apartment after their mother and brother died in a car accident. On June 1, 2010, the Department of Children and Family Services (Department) received a referral from the police reporting that Alejandra had told her babysitter that father had sexually abused her. Father was alleged to have raped Alejandra, masturbated in front of her, and made her watch pornography. The police conducted an investigation into the allegations, interviewing both Alejandra and R.

Alejandra told the police that in September 2009, father had questioned her about messages she exchanged with a male friend online. Alejandra said that father told her, " 'if you're so curious about sex I'll show you what[] it['s] about.' " Father then

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     Section 366.26 governs the termination of parental rights of children adjudged dependents of the court.

2

removed Alejandra's clothes and put his finger inside her vagina. Alejandra started crying and father stopped. Father then told Alejandra, " '[l]et's pretend nothing happened.' "

Alejandra stated that, after the above incident, the abuse always started the same way. Father would call Alejandra to his bed at night when R. was asleep. Father would take off Alejandra's clothes and put his finger inside her vagina. After about one month, father forced Alejandra to have sexual intercourse with him. Father had sex with Alejandra approximately ten different times. Father told Alejandra that if she told anyone what happened, the authorities would separate her and R. and put R. in a foster home. He also said that it would be her fault if he went to "jail."

R. was also interviewed by the police. She pointed to her vagina and said that father had "hurt" her there when he bathed her by " 'rub[bing]' " her. R. also said that she had seen father and Alejandra asleep in the same bed. When asked what they were doing, R. "became very quiet and serious." After a "long pause," R. stated that they were " 'sleeping.' " Father was arrested and the children were placed in foster care.

Alejandra and R. repeated their accounts of the abuse when interviewed by the Department. In addition, Alejandra reported that father had hit her in the face with his fist and pulled her hair. R. also stated that she had observed father hit Alejandra with his fist and pull her hair. On June 4, 2010, the Department filed a petition alleging that Alejandra and R. came within the jurisdiction of the juvenile court within the meaning

of section 300, subdivisions (a), (b), (d) and (j)[3] based on father's physical and sexual abuse of the children.

After being placed in foster care, Alejandra was contacted by her paternal aunt who accused her of telling lies and being at fault for her father's arrest. The foster mother reported that Alejandra became very upset after the phone call. Alejandra then told her foster mother that she wanted to talk to the social worker and the police again because she had lied.

When Alejandra was interviewed by the Department investigator on June 16, 2010, she recanted all of her allegations. She said that she had lied about the sexual abuse because she was upset with father. She further stated that father had never hit her in the face or pulled her hair. When R. was interviewed by the investigator, she repeated the same statements she had previously made. She pointed to her vagina and said that father had "hurt" her "when he wash[ed] me down there." She also said that she had seen father sleeping in the same bed as Alejandra. She further stated that she saw father hit Alejandra in the face and pull her hair.

---

[3]     Section 300, subdivision (a) provides that a child comes within the jurisdiction of the juvenile court when the child has suffered "serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." Section 300, subdivision (b) provides a basis for juvenile court jurisdiction when the child has suffered serious physical harm or illness as a result of the parent's failure to adequately protect the child. Section 300, subdivision (d) provides that a child comes within the jurisdiction of the juvenile court when "[t]he child has been sexually abused" by his or her parent. Section 300, subdivision (j) provides that the juvenile court may assert jurisdiction over a child when "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."

The Department also interviewed the children's babysitter. The babysitter said that when Alejandra reported the sexual abuse to her, she took the children to the police station. She then called father to tell him that the children were at the station and he appeared very nervous. He told the babysitter that Alejandra was always lying and volunteered that he suspected she had lied about him "wanting to watch her or touch her." The babysitter responded that she did not know why the children were there. Father came to the station and was placed under arrest for multiple accounts of rape and sexual abuse. He was later criminally charged with 35 counts of child abuse.

The Department interviewed Alejandra again on July 8, 2010. Alejandra had been in therapy and said that she wanted to tell the investigator the truth now. She said that father had asked her to have sex with him on several occasions, and that she had said no each time. She said that she was upset by father's requests and that was the reason she told her babysitter that father had molested her.

On July 12, 2010, the court sustained the petition on all counts. The court removed the children from father's custody and placed them in the care of the Department for suitable placement. Alejandra and R. were eventually placed in the home of maternal grandparents.

A verdict was reached in father's criminal case on June 13, 2011. Father was convicted of one count of battery and one count of child abuse and acquitted of three counts. The court dismissed seven counts on the prosecution's motion and the jury was unable to reach a verdict on the remaining 23 counts. The prosecution did not seek a retrial of the remaining counts. Father was sentenced to 180 days in county jail.

On August 17, 2011, the juvenile court terminated reunification services. The Department submitted a report indicating that the children liked living with maternal grandparents and were likely to be adopted by them. On February 15, 2012, the court terminated father's parental rights as to both children. Father filed a timely appeal on April 11, 2012.

## *CONTENTIONS*

Father contends that his trial counsel was ineffective because counsel did not inform the juvenile court of the outcome of the criminal case against father. Father argues that had this information been before the juvenile court, it might have "ruled more favorably to father."

## *DISCUSSION*

1.    *Father Mischaracterizes the Import of the Criminal Verdict*

Father contends that he was "exonerated" by the criminal court and that the jury's failure to convict him "suggests that the defendant is not dangerous to his children." First, father's argument neglects to take into account the jury's finding that he was guilty of two counts of child abuse. Second, when a jury acquits a defendant because the prosecution has not proven guilt beyond a reasonable doubt, that verdict does not prove that the defendant is innocent. " '[I]t merely proves the existence of a reasonable doubt as to his guilt . . . . [Citation.]' " (*Dowling v. U.S.* (1990) 493 U.S. 342, 349.) Similarly, when a jury is unable to reach a verdict, "the status is the same as if there had been no trial. [Citation.]" (*People v. Crooms* (1944) 66 Cal.App.2d 491,

6

499.) Therefore, the outcome of father's criminal case does not constitute evidence of his innocence.

2.    *Father Has Not Shown That His Trial Counsel Was Ineffective*

Father makes two arguments. First, he contends that his trial counsel should have presented evidence of his "non-convictions" in support of a request to " 'undo [the court's] order terminating reunification services.' " Second, he contends that if his trial counsel had informed the court of the criminal verdict at the section 366.26 hearing, the court might have reached "a more favorable decision on Father's parental rights."

With respect to the first argument, review of an order terminating reunification services must be sought by extraordinary writ in order to preserve any right of later appeal. (Section 366.26, subd. (l); Cal. Rules of Ct., Rules 8.450, 8.452.) If the parent does not file a writ petition challenging the order made, appellate review of that issue is waived. (Section 366.26, subd. (l)(2).) Here, father did not file a writ petition from the court's order terminating reunification services, and therefore, has waived the issue. However, even if we find that the issue is not waived, counsel's failure to inform the court of the criminal verdict was not ineffective assistance of counsel.

"Where the ineffective assistance concept is applied in dependency proceedings the appellant must meet the standards set forth in *People v. Pope* (1979) 23 Cal.3d 412 [] and *Strickland v. Washington* (1984) 466 U.S. 668. [Citation.] First, there must be a showing that 'counsel's representation fell below an objective standard of reasonableness . . . . [¶] . . . under prevailing professional norms.' [Citations.] Second, there must be a showing of prejudice, that is, 'reasonable probability that, but for

7

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1711.)

Here, father contends that his trial counsel was ineffective because counsel did not inform the juvenile court of the verdict in the criminal case. However, as explained above, the state's failure to secure a conviction against father on all counts does not constitute evidence of his innocence. (See, e.g., *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 563 ["The fact a prosecutor does not bring charges or does not secure a conviction for spousal abuse does not make it 'appear' the offender has reformed and that it would be in the *best* interests of any children involved to undo the termination of reunification services."].) Therefore, father has not shown that counsel erred in failing to inform the juvenile court of the outcome of father's criminal case.

Furthermore, with respect to father's second argument, father does not explain how informing the juvenile court of the outcome of his criminal case would have impacted the court's decision to terminate father's parental rights. At a section 366.26 hearing, the sole issue "is whether there is clear and convincing evidence that the child is adoptable. [Citations.]" (*In re Josue G.* (2003) 106 Cal.App.4th 725, 733.) If the court finds that a child is likely to be adopted, it must select adoption as the permanent plan, unless it finds that termination of parental rights would be detrimental to the child under one of the exceptions set forth in section 366.26, subdivision (c). (*In re Jamie R.* (2001) 90 Cal.App.4th 766, 773.) Here, although father generally argues that the juvenile court might have ruled "more favorabl[y]" to father at the section 366.26

8

hearing had it known about the outcome of his criminal case, father does not address whether he could have shown an exception to the termination of parental rights.

We therefore conclude that father has not shown that his counsel's representation fell below an objective standard of reasonableness or that father was prejudiced by counsel's decision not to report the outcome of father's criminal trial to the juvenile court.[4]

---

[4] Father's argument that he had a due process right to have the juvenile court consider the criminal verdict likewise fails on the grounds that father was not prejudiced by this alleged due process violation. (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1556 [" ' "[T]he standard of review where a parent is deprived of a due process right is whether the error was harmless beyond a reasonable doubt. [Citations.]" ' "].)

### *DISPOSITION*

The order terminating father's parental rights is affirmed.

### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, Acting P. J.

WE CONCUR:

ALDRICH, J.

HEESEMAN, J.