Filed 1/16/24  P. v. Hernandez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEREMIAH LEO HERNANDEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B322834<br>(Super. Ct. No. 22F-00502)<br>(San Luis Obispo County) |

A jury found Jeremiah Leo Hernandez guilty of aggravated mayhem (Pen. Code,[1] § 205, count 1) and assault with a deadly weapon (§ 245, subd. (a)(1); count 2).  On count 1, the trial court sentenced Hernandez to life in prison with the possibility of parole.  As to count 2, the jury found that he inflicted great bodily injury.  In a bifurcated portion of the trial, the jury found true factors in aggravation.  The court stayed the sentence on count 2 pursuant to section 654.  We affirm.

---

[1] All statutory references are to the Penal Code.

FACTS

Adriana Zaragoza has known Hernandez for several years. She says she loves him, but has never been in a romantic relationship with him. The victim, John Doe,[2] met Zaragoza and Hernandez when Doe visited the homeless encampment where they were staying. Doe knew Hernandez as "Smurf."

About two weeks after they met at the encampment, Zaragoza ran into Doe again. Doe told Zaragoza that he is a tattoo artist. Zaragoza said she wanted him to do a tattoo for her. They arranged to meet at Doe's hotel room.

When Zaragoza told Hernandez that Doe was going to do a tattoo for her, they argued. Hernandez did not want Zaragoza to have Doe do a tattoo. Zaragoza became upset that Hernandez was telling her what to do.

Hernandez and Zaragoza usually communicated through Facebook Messenger. Hernandez sent Zaragoza a message, "Babe, I'm fucking him up." He also sent another message stating, "I'm fucking heated."

Zaragoza went to Doe's hotel room where Doe created a tattoo template for her. At some point after midnight, Doe and Zaragoza left the hotel room and began walking across the hotel parking lot. Hernandez came out from near a parked car wearing a ski mask and carrying a knife. In surveillance footage Zaragoza can be heard to scream and say "Jeremiah" and "stop."

Hernandez came at Doe from behind. Doe felt a blow to the side of his face. Doe saw Hernandez holding a large knife. Hernandez started swinging the knife at Doe. Doe was able to fight Hernandez off. During the struggle, Hernandez's ski mask

---

[2] The trial court ordered the victim to be known as "John Doe" to protect his identity.

2

moved enough that Doe could identify him. Doe was 99.9 percent sure his attacker was Hernandez. Doe managed to hit Hernandez. Hernandez broke off the attack and fled.

Does was bleeding profusely from the cut on his face. He called 911 and waited in his hotel room. When the police arrived, Doe told an officer that his attacker was Smurf. When the officer asked who Smurf is, Doe told him, "Jeremiah something."

Doe had a deep laceration from his eyebrow to his chin. The cut is through skin, subcutaneous tissue, fat, muscle, and nerves. His surgeon testified an eight-inch scar will remain permanently on his face and the nerve damage will never fully heal.

Hernandez did not present an affirmative defense.

DISCUSSION

I.

*Marsden Motion*

Hernandez contends the trial court abused its discretion in denying his motion pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

At the hearing on the motion, Hernandez complained about his counsel's reluctance to file a motion to suppress identification evidence; to file a section 995 motion; and to make a motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). Counsel explained that he intended to file a motion challenging suggestive identification, but as a pre-trial motion, not as a motion to suppress; that he told Hernandez the evidence at the preliminary hearing made a section 995 motion inappropriate; and Hernandez agreed that they would not make a *Pitchess* motion.

3

The trial court found that Hernandez was being competently represented and denied the *Marsden* motion. Hernandez elected to dismiss his counsel and represent himself.

Hernandez argues that the issue was not competent representation, but his ability to communicate with counsel. Hernandez cites *People v. Streeter* (2012) 54 Cal.4th 205, 230, for the proposition that the defendant is entitled to *Marsden* relief if the record clearly shows that a defendant and his appointed counsel have become embroiled in an irreconcilable conflict that ineffective representation is likely to result.

But the record shows Hernandez had no problem communicating with his counsel. His counsel recognized all of Hernandez's concerns and explained how he was responding to them. At most Hernandez and his counsel disagreed on strategy. A disagreement on strategy is not a basis for granting a *Marsden* motion. (*People v. Welch* (1999) 20 Cal.4th 701, 728-729.)

Hernandez argues that his dismissal of counsel and choice to represent himself shows an irreconcilable conflict between himself and his counsel. But Hernandez has extensive experience with the California justice system. He expressed confidence at the hearing on his motion to represent himself that he could get his case dismissed on pre-trial motions. Dismissal of Hernandez's counsel was not the result of irreconcilable conflict; it was the result of hubris.

II.

### *Juror Misconduct*

Hernandez contends the trial court's failure to adequately investigate a comment made by a prospective juror violated his Sixth Amendment right to an impartial jury.

4

During a break in jury voir dire, a prospective juror told the trial court that while he was in the jury services room, he heard a comment from another prospective juror "who felt that the police officers in this case were not treated well by [Hernandez], and there was some concern about that." The prospective juror who reported the matter did not know if anyone else heard the comment. He said the person who made the comment was dismissed as a juror. The prospective juror who heard the comment told the court that he could disregard the comment and base the verdict on the evidence.

Hernandez moved for a mistrial on the ground that all the prospective jurors perjured themselves when they answered no to the question whether they had heard anything about Hernandez's case, other than what was discussed in the courtroom. The trial court denied the motion on the ground that it is speculation to say other jurors heard the comment and perjured themselves.

To say that jurors perjured themselves goes beyond speculation, it is absurd. The trial court has broad discretion in deciding whether and how to conduct an inquiry into juror misconduct. (*People v. Clark* (2011) 52 Cal.4th 856, 971.)

Here the prospective juror who made the comment was not on the jury. The reporting juror told the trial court that he would disregard the comment. There is no evidence that anyone else heard the comment. Finally, the prospective jurors answered no to whether they had heard anything about the case outside the courtroom. The court was well within its discretion in not conducting a further inquiry.

5

III.

*Substantial Evidence*

Hernandez contends his conviction for aggravated mayhem was not supported by substantial evidence.

Section 205 provides:  "A person is guilty of aggravated mayhem when he or she unlawfully, under circumstances manifesting extreme indifference to the physical or psychological well-being of another person, intentionally causes permanent disability or disfigurement of another human being or deprives a human being of a limb, organ, or member of his or her body.  For purposes of this section, it is not necessary to prove an intent to kill.  Aggravated mayhem is a felony punishable by imprisonment in the state prison for life with the possibility of parole."

While aggravated mayhem requires the intent to cause permanent disability or disfigurement, simple mayhem, a lesser included offense, is a general intent crime.  (*People v. Robinson* (2014) 232 Cal.App.4th 69, 75; § 203.)  Hernandez claims there was no substantial evidence to cause Doe permanent disability or disfigurement.

In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the judgment.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  We discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient verity.  (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.)  We have no power on appeal to reweigh the evidence or judge the credibility of witnesses. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.)  We must affirm if we determine that any rational trier of fact could find

6

the elements of the crime beyond a reasonable doubt. (*People v. Johnson* at p. 578.)

Here the evidence was that Hernandez did not want Zaragoza to get a tattoo from Doe. Hernandez threatened ". . . I'm fucking him up." Hernandez armed himself with a large knife and covered his face with a ski mask. He went to Doe's hotel and lay in wait for Doe in the hotel's parking lot. When Doe arrived, Hernandez put a deep eight inch gash in Doe's face, where it was bound to leave a permanently visible scar. There was more than ample evidence that Hernandez had the specific intent to permanently disfigure Doe. In fact, under the state of the evidence, no other reasonable conclusion was possible.

Hernandez's reliance on *People v. Sears* (1965) 62 Cal.2d 737 (*Sears*) is misplaced. In *Sears*, the defendant was beating the victim's mother with a steel pipe. The victim was injured when she inserted herself between the defendant and her mother. Our Supreme Court held there was insufficient evidence of aggravated mayhem. Here Doe was not incidentally injured while Hernandez was attacking someone else. Instead, Doe was the direct target of Hernandez's attack.

Hernandez's reliance on *People v. Anderson* (1965) 63 Cal.2d 351 (*Anderson*) is also misplaced. In *Anderson*, the defendant was living with the 10 year old victim and her family. The victim's brother discovered the victim's body next to her bed under boxes and clothes. The victim had 41 knife wounds over her body. The defendant admitted he killed the victim, but claimed he did not remember doing it. The jury was instructed on felony-murder and murder in the commission of mayhem. The jury found the defendant guilty. Our Supreme Court found no substantial evidence that the defendant intended to commit

mayhem. The court stated, "The evidence does no more than indicate an indiscriminate attack . . . ." (*Id*. at p. 359.)

This was not an indiscriminate attack. Hernandez told Zaragoza "babe, I'm fucking him up." Hernandez prepared for the attack by obtaining a knife, a ski mask, and going to the parking lot of Doe's hotel. Hernandez put a deep eight-inch cut on Doe's face, where it was found to leave a permanent disfiguring scar. There is substantial evidence of Hernandez's specific intent to commit mayhem.

IV.

### *Hernandez was Given Adequate Notice*

Hernandez contends his right to due process was violated when he did not receive adequate notice of nine aggravating factors the prosecution proved against him.

At a pretrial hearing the prosecutor stated that she was moving to amend the information to allege nine aggravating factors and to remove a third count. Hernandez did not object, and admitted that he received a copy of the motion and amended information a few days earlier. The trial court read the amended information into the record. There was no mention of the nine aggravating factors. Hernandez did not object.

Prior to voir dire the trial court pointed out that the nine aggravated factors were not in the information. The court asked, "Mr. Hernandez, you're familiar with the part of the amended information that has the aggravating factors?" Hernandez answered, "Yeah. And I do believe it's something to do with – well, I would like to bifurcate." The court granted Hernandez's motion to bifurcate.

Near the end of the prosecution's case-in-chief, the parties discussed the nine aggravating factors with the trial court.

8

Hernandez asked if the prosecutor was planning to present to the jury every single charge that he ever had as an aggravating factor. The prosecutor said she was not; she would only present the nine aggravating factors. Hernandez replied, "Okay. So I just want to lodge an objection. That's it."

While the jury was deliberating the trial court asked the prosecution how it wished to proceed with the nine aggravating factors. The prosecution stated that it intended to introduce a certified copy of the prior convictions packet (969(b) packet) and one or two witnesses. The parties discussed redaction of the prior convictions overturned on appeal. Ultimately Hernandez decided he did not want any redactions.

After the jury returned guilty verdicts on the substantive offenses and related enhancements, the parties met with the trial court. The court again noted that the nine aggravating factors were not listed in the motion to amend the information. Nevertheless, the court found that Hernandez was on notice of the aggravating factors because they had been discussed since "day one." The prosecution wanted to file an amended information listing the aggravating factors. But because the jury was waiting, the court elected to proceed with the trial on the aggravating factors. Hernandez objected on the ground that it was "cumulative error."

During a lunch break the prosecutor again sought to file an amended information that included the aggravating factors. Hernandez objected, stating: "Yeah. My thing is the – the reason why we're having a bifurcated trial was because I was aware that it was supposed to be for my priors, admitting my priors. Now, what we're talking about here is – the reason why I'm objecting is because we just had a trial that states that it was for aggravated

9

mayhem, right, with no aggravating factors that were, obviously – that the Court had filed against me. And also, we have assault with a deadly weapon with no weapon. So I object on those grounds. That's it."

The trial court provisionally granted the motion to amend subject to additional research on whether the factors have been properly pled.

At the jury trial on the aggravating factors the prosecution submitted the 969(b) packet and presented a probation officer who testified to Hernandez's criminal record and performance on probation. Hernandez presented no evidence. The jury returned a true finding as to all aggravating factors. The trial court allowed the amended information.

Hernandez met with the trial court and prosecution on numerous occasions to discuss the nine aggravating factors. At no time did he object on the ground of lack of notice. In fact, the court expressly asked if he was familiar with the aggravating factors. He replied that he was and asked for a bifurcated trial. His only request for clarification was asking the prosecutor whether she intended to present to the jury every charge he ever had. When the prosecutor assured him she would present only the nine aggravating factors, "Okay. So I just wanted to raise an objection. That's it." Ultimately he agreed to give the entire 969(b) packet to the jury. The trial court's finding that Hernandez was on notice of the aggravating factors since "day one" is well supported by the record.

As to the requirement of pleading, the prosecutor eventually filed an amended pleading containing the nine aggravating factors. Hernandez was not prejudiced by the delay because he had prior notice. Moreover, the entire trial on the

10

aggravating factors consisted of his 969(b) packet and the testimony of his probation officer.  Hernandez does not suggest how he would have been aided had the information been formally amended at an earlier time.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

11

Timothy S. Covello, Judge

Superior Court County of San Luis Obispo

_____

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven K. Matthews and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.