[No. F011210. Fifth Dist. Apr. 18, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY DeWAYNE DAVENPORT, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the Statement of the Case and parts II and III.

**COUNSEL**

Oliver J. Northup, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Gelacio L. Bayani, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BAXTER, J.—

INTRODUCTION

The published parts of this opinion involve appellant's conviction of burglarizing a cabin owned and occupied by his estranged wife's parents. His primary contention on appeal is that since his wife also resided there, Civil Code section 5102, subdivision (a) gave him an unconditional right to enter, thereby precluding a burglary conviction as a matter of law.

STATEMENT OF THE CASE\*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

FACTS

A.  *Background.*

Mary and Larry Hillier own a two-story cabin at Long Barn, which is the subject of the first degree burglary conviction on count V. The second floor is accessible only from exterior stairs and consists of two small bedrooms and some storage space. The kitchen, bathroom, and a bedroom are on the first floor.

They purchased the cabin in May of 1984 and commenced living there fulltime in October. Later, Mary moved to premises closer to her work and spent weekends at the cabin with Larry. She lived full time at the cabin from May or June of 1986 through the balance of that year.

Appellant married the Hilliers' daughter, Gina, in 1984. Gina moved into her parents' cabin in May of 1985, and appellant joined her in July. They moved into an apartment for approximately three months, but in the winter of 1985 returned to live in the cabin. Gina and appellant slept upstairs and the Hilliers slept downstairs. The kitchen and bathroom facilities were shared. Gina and appellant separated on February 15, 1986. Appellant moved out of the cabin and Gina continued to live there. Gina moved into the bedroom downstairs to accommodate her pregnancy and gave birth to their daughter in April. Appellant relinquished his keys to the cabin in April at Mary Hillier's request.

---

\*See footnote, *ante*, page 885.

Appellant left behind certain items of personal property when he moved out. Gina informed him that she had boxed and stored his items upstairs so that he wouldn't have any reason to come onto the first floor area to retrieve them. She insisted on being present when he came to get his things. Appellant, assisted by a friend, took possession of some of his personal property in late August. Gina refused them entry onto the first floor and directed them to where the items were on the second floor.

Although Gina and appellant were divorced prior to trial, no legal proceeding of any type had been filed prior to appellant's arrest in September 1986.

During the evening of September 3, 1986, appellant and codefendant Erin Hiatt set out to drive from Modesto to Long Barn to pick up appellant's belongings remaining at the Hillier cabin and to return Gina's pickup truck. Appellant was driving a borrowed yellow flatbed truck and Hiatt was driving Gina's pickup. The flatbed had mechanical problems and was left parked alongside Mill Villa Road off Highway 108. They proceeded to Long Barn in the pickup, arriving at 2 a.m.

B. *Caltrans crimes.*

The Caltrans maintenance yard adjoins the Hillier cabin. Appellant and Hiatt entered the Caltrans yard by climbing over its six-foot fence and broke into and ransacked the office and truck shed barn. They placed a large quantity of Caltrans's personal property, including calculators, walkie-talkies, cameras, cash, chain saws, a hand grinder, drill motors, sockets, pipe wrenches, and various hand and power tools, into a 1980 Caltrans pickup, drove out the yard, and transferred the stolen property into Gina's pickup. Appellant hid the Caltrans pickup off the road. They left in Gina's pickup to retrieve the flatbed.

They drove the disabled flatbed truck to Jamestown and left it at a business called Whistle Stop. They proceeded in Gina's pickup to Modesto and to Turlock. In the early morning hours of September 5, 1986, Sharon Stetson became concerned when Hiatt asked her son to store "some stuff" in their garage overnight. She had Hiatt write down his name, address and license number on a piece of paper and sign it. She called the Turlock Police Department the next day. The property was identified as taken in the Caltrans burglary.

C. *Burglary of the Hillier cabin.*

Appellant and Hiatt returned to Jamestown on September 5 and got the yellow flatbed truck repaired with the assistance of a mechanic. They took

the flatbed and Gina's pickup to Long Barn and backed them up to the cabin. No one was there, as Mary Hillier, Gina and her daughter were spending the day in Sunnyvale. Appellant and Hiatt broke through windows on both floors of the cabin and loaded the trucks with Gina's and Mary Hillier's belongings. They ransacked the cabin. Tracey Espinoza, another daughter of the Hilliers, unexpectedly drove into the cabin's driveway with her friend, Fred Miller, at 7 p.m. They saw the loaded trucks and notified the police. Mary Hillier arrived approximately 20 minutes later, identified her property and confirmed that appellant and Hiatt did not have permission to enter the cabin.

## D. *Theft of vehicles.*

When Tracey Espinoza drove up the cabin driveway, appellant thought it was his father-in-law and fled from the cabin to where the stolen Caltrans truck was cached. He hot-wired the vehicle and drove for a few miles. Smelling gas, he recalled having cut the fuel line the morning of the theft and stopped the vehicle. When he tried to restart the engine through the use of a screwdriver, a spark ignited the gasoline and the vehicle caught fire.

Appellant left the burning Caltrans truck and ran to a white Ford pickup truck that its owner, David Gilmour, had left along Wards Ferry Road when its brakes malfunctioned earlier that day. Appellant drove off without brakes in Gilmour's truck. He was arrested in Sonora and gave the arresting officer a false name.

### DISCUSSION

### I.

*Did Appellant Have an Unconditional Statutory Right to Enter the Hillier Cabin? If so, Should the Burglary Conviction on Count V Be Reversed as a Matter of Law?*

Penal Code section 459 provides in relevant part: "Every person who enters any house, room, apartment, tenement . . . or other building, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary. . . ."

▮▮ Appellant contends the burglary conviction on count V must be reversed because he had the unconditional right to enter the Hillier cabin under Civil Code section 5102, subdivision (a), which in pertinent part provides: "(a) . . . [N]either husband nor wife has any interest in the separate property of the other, but neither can be excluded from the other's

dwelling . . . ." Appellant maintains the following uncontroverted facts existed when the alleged offense occurred triggering application of the statute and thereby making his entry into the cabin immune from burglary: (1) his marriage to Gina; (2) Gina being a resident of the cabin; and (3) the absence of any court proceeding to terminate their marriage or otherwise limit their respective rights and obligations to one another and, specifically, to occupancy of the cabin. He reasons that the statutory prohibition against exclusion is equivalent to an unconditional right of entry.

Appellant's attempt, however, to cast Civil Code section 5102, subdivision (a) in absolute terms is not supported by interpretations of this section's predecessor statutes, Civil Code sections 156 and 157. In analyzing these predecessor sections, one court made the following observations: "The appellant contends the plaintiff could not recover in ejectment because neither the husband nor the wife could be excluded from the dwelling of the other, reliance being placed upon the provisions of sections 156 and 157 of the Civil Code. At the time of the commencement of this action the house was not the family dwelling place. The parties were living separate and apart. The provisions of sections 156 and 157 relate to the marital right of the spouses to occupy the family home." (*McDuff* v. *McDuff* (1919) 45 Cal.App. 53, 56 [187 P. 37].)

The *McDuff* court held that in an ejectment action one could recover from his or her spouse notwithstanding Civil Code sections 156 and 157 because the parties were no longer living together. It found that the provisions of the predecessor statutes to section 5102 related solely to a marital right of spouses to occupy a family home. The *McDuff* court acknowledged the factual reality in that case that though the McDuffs were still married to each other, they were no longer living together in a single family residence.

In *People* v. *Sears* (1965) 62 Cal.2d 737 [44 Cal.Rptr. 330, 401 P.2d 938], the defendant moved from the family residence to a hotel. Three weeks later, defendant entered the family residence through the unlocked front door with a pipe under his shirt. After getting his wife out of bed, an argument ensued and he proceeded to assault her. Defendant's step-daughter attempted to intercede on her mother's behalf and was assaulted and killed by the defendant. Although the Supreme Court reversed the first degree murder conviction and death sentence on other grounds, it concluded that the evidence supported the burglary instruction given by the trial court and advised that a felony murder burglary instruction be given on retrial.

"We reject defendant's contention that the court should not have given the burglary instruction because defendant, as Clara's husband, had a right

to enter the family home. One who enters a room or building with the intent to commit a felony is guilty of burglary even though permission to enter has been extended to him personally or as a member of the public. [Citation.] The entry need not constitute a trespass. [Citations.] Moreover, since defendant had moved out of the family home three weeks prior to the crime, he could claim no right to enter the residence of another without permission. Even if we assume that defendant could properly enter the house for a lawful purpose (cf. Civ. Code, § 157), such an entry still constitutes burglary if accomplished with the intent to commit a felonious assault within it." (62 Cal.2d 737, 746.)

Appellant's contention that the holding in *Sears* was overruled by *People v. Gauze* (1975) 15 Cal.3d 709 [125 Cal.Rptr. 773, 542 P.2d 1365] is misplaced. The cases are clearly distinguishable. Gauze and a roommate quarreled at a friend's house. The roommate returned to their apartment. Gauze borrowed a shotgun, entered their apartment, and shot the roommate. The Supreme Court affirmed the assault with a deadly weapon conviction, but reversed the burglary conviction.

"[W]e conclude that defendant cannot be guilty of burglarizing his own home. His entry into the apartment, even for a felonious purpose, invaded no possessory right of habitation; only the entry of an intruder could have done so. More importantly, defendant had an absolute right to enter the apartment. This right, unlike that of the store thief in *Barry*, did not derive from an implied invitation to the public to enter for legal purposes. It was a personal right that could not be conditioned on the consent of defendant's roommates. Defendant could not be 'refused admission at the threshold' of his apartment, or be 'ejected from the premises after the entry was accomplished.' (*People* v. *Barry* (1892) *supra*, 94 Cal. 481, 483 [29 P. 1062].) He could not, accordingly, commit a burglary in his own home." (15 Cal.3d 709, 714.)

The *Gauze* court rejected the People's contention that *Sears* compelled the conclusion that a tenant could burglarize his own apartment and described the language quoted for that proposition as dicta. Nevertheless, *Gauze* supports *Sears* under the latter's facts: "[O]ur opinion that Sears could be convicted of burglary was based on two separate considerations. First, Sears had no right to enter his wife's house; that fact alone supported the conviction. Second, even if he had a right to enter, the right was based on former section 157 of the Civil Code (now § 5102), which gave a person the right to enter the *separate* property of his or her spouse, subject to certain conditions. Thus, Sears' 'right' to enter his wife's house, like the 'right' of the felon to enter the store in *Barry*, was at best conditional. An entry for anything but a legal purpose was a breach of his wife's possessory

rights, in marked contrast to the entry in the present case." (15 Cal.3d 709, 715, fn. omitted.)

■ In *People* v. *Pendleton* (1979) 25 Cal.3d 371 [158 Cal.Rptr. 343, 599 P.2d 649], the court reviewed its holding in *Gauze* and concluded, "The law after *Gauze* is that one may be convicted of burglary even if he enters with consent, provided he does not have an unconditional possessory right to enter." (*Id.* at p. 382.) To sustain a burglary conviction, the People must prove that a defendant does not have an unconditional possessory right to enter his or her family residence. (*Fortes* v. *Municipal Court* (1980) 113 Cal.App.3d 704, 713-714 [170 Cal.Rptr. 292].)

■ There is substantial evidence supporting the conclusion that appellant did not have the right to enter the cabin on September 5, 1986, or that any such right was conditional. Appellant and Gina had been separated for months prior to the burglary. Gina continued to live at the cabin, and appellant lived elsewhere. He relinquished his keys at Mary Hillier's request and had already taken possession of some of his personal property. Gina instructed him not to take his remaining personal property unless she was present. She boxed and stored his items upstairs so he wouldn't have any reason to set foot downstairs, and told him so. Though no dissolution or legal separation proceeding had been filed when the burglary occurred, serious difficulties in the marital relationship existed and appellant no longer had a possessory right to enter the Hillier cabin. Gina did not have an ownership interest in the cabin. At best she had a tenancy at will.

Appellant did not have an ownership or tenancy interest entitling him to enter the cabin without permission. His right of entry under Civil Code section 5102 was qualified to a lawful purpose. The People met their burden of proof that appellant's entry was for an unlawful purpose.

Civil Code section 5102, subdivision (a) does not endow one with the right to burglarize the dwelling of his or her estranged spouse. "An entry for anything but a legal purpose [is] a breach of [the spouse's] possessory rights, . . ." (*People* v. *Gauze, supra*, 15 Cal.3d 709, 715.) Appellant was properly convicted of burglary of the Hillier cabin.

## II., III.*

．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．

*See footnote, *ante,* page 885.

### DISPOSITION

The judgment of conviction as to count III, receiving stolen property, is reversed. The trial court is ordered to amend the abstract of judgment to reflect our holding reversing the receiving stolen property count. In all other respects, the judgment is affirmed.

Martin, Acting P. J., and Dibiaso, J., concurred.

A petition for a rehearing was denied July 20, 1990, and appellant's petition for review by the Supreme Court was denied July 18, 1990.