[No. E045880. Fourth Dist., Div. Two. Dec. 21, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID CHRISTOPHER ULLOA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts 3., 4., 5., 6., and 7.

## COUNSEL

Helen S. Irza, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil Gonzalez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GAUT, J.**—Defendant David Christopher Ulloa appeals from judgment entered following jury convictions for first degree, residential burglary (count 1; Pen. Code, § 459);[1] receiving stolen property (count 2; § 496, subd. (a)); and misdemeanor vandalism (count 3; § 594, subd. (b)). Defendant was sentenced to three years of formal probation and 120 days in jail.

Defendant contends he did not commit burglary as a matter of law because he was a cotenant in the apartment where the alleged burglary occurred. Defendant alternatively argues the trial court erred in not instructing the jury on property law principles required to assess his right to enter the apartment. Defendant also asserts there was insufficient evidence supporting his conviction for receiving stolen property and, alternatively, that the court erred in not instructing the jury on community property law principles relating to the alleged stolen property. Defendant further contends the court erred in failing to instruct the jury that defendant could not be guilty of receiving stolen property unless he intended permanently to deprive the victim of the property when he took it. Defendant also claims the trial court abused its discretion in allowing evidence impeaching the victim, which included unsubstantiated

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

accusations defendant had committed uncharged offenses, and in allowing testimony about the circle of violence.

We conclude there was no prejudicial error or any constitutional due process violation, and affirm the judgment.

## 1. Facts

In December 2005, defendant and Tracy Ulloa, as lessees, jointly signed an apartment lease. The one-year lease term commenced on January 1, 2006, and converted to a month-to-month lease upon expiration of the initial one-year term. The lease was in full force and effect at the time of the charged crimes on February 2, 2007.

In June 2006, defendant and Tracy married and were still married at the time of defendant's trial in May 2008. Tracy acknowledged at trial that she and defendant had been separated two or three times prior to the trial and, at the time of the trial, they had been separated for a few months. When defendant and Tracy separated, defendant moved out as soon as he found somewhere else to live. While they were living in their jointly leased apartment (the apartment), they separated several times, "sometimes for a week, two weeks, a day." Tracy described defendant and herself as "a breakup to makeup couple."

On February 2, 2007, at 5:00 a.m., Tracy called 911 and requested a police officer come out to her apartment because her husband was "kicking down the door and trying to get in my apartment." When the 911 operator asked Tracy if she and her husband were separated, Tracy said, "yes." Tracy again told the operator that defendant was kicking down her front door. When the operator asked if defendant was living with Tracy, Tracy said, "no."

Police Officer Quinn testified that at 5:00 a.m., he responded to Tracy's 911 call. Upon arriving at the apartment, he noticed the front door was so badly damaged he could see through it. He saw Tracy sitting on a couch crying. She appeared upset and frightened.

Tracy told Quinn that at 5:00 a.m. she was awakened by a knock. She did not answer because she thought it was defendant. She had received numerous

phone calls throughout the night from him. After the initial knock, defendant began calling for her from outside the apartment. At one point while defendant was outside, Tracy went to check on her two young children who were asleep in the back room of the apartment.

Tracy said the knocking got louder and more forceful as defendant beat on the door. Eventually defendant broke into the apartment by breaking the door off the doorframe. Upon entering the apartment, defendant took Tracy's wallet out of her purse, which was in the living room, and withdrew $900. Tracy testified the money was hers and she was going to use it to pay the rent.

After taking Tracy's money, defendant began punching holes in the bathroom door. This caused the door to swing open and the mirror fell off the door and broke.

Tracy told Quinn this was not the first time she and defendant had had an argument that had escalated to this level.

Quinn testified that Tracy told him she was married to defendant but they had not been living together. She said they had been separated for four months and were going through a divorce. Defendant had not lived at the apartment for four months. Tracy told Quinn defendant did not have any of his personal property in the apartment.

Police Detective Dodson testified that on February 27, 2007, a few weeks after the incident, he spoke to Tracy on the phone. She told him defendant had been constantly calling her the night before he broke her door down and took her money. She said defendant's mother, Elizabeth, gave her back her wallet, with all her money in it.

Dodson testified he also spoke on the phone to Elizabeth about the incident. She was aware that defendant had taken cash from Tracy's wallet. Elizabeth told Dodson she had told defendant to return the property. Defendant gave Elizabeth Tracy's wallet and the cash and Elizabeth returned it to Tracy.

At trial, Tracy and Elizabeth recanted most of what they had told the officers. Tracy denied she and defendant were separated at the time of the incident. She claimed defendant was living with her and was out with friends

that night. When he returned in the early morning on February 2, 2007, Tracy and defendant got into an argument. She tried to prevent defendant from entering the apartment with his keys but eventually she let him in and they began arguing. Defendant eventually left and Tracy called the police because she wanted someone to mediate their dispute.

Tracy further testified that defendant had personal belongings at the apartment on February 2, 2007, although she might have told an officer defendant had no personal belongings at the apartment. Tracy said she was not afraid of defendant and never had been.

Tracy testified that most of what she told Quinn and Dodson was either false or exaggerated. Defendant did not cause all of the damage to the doors and did not take her purse. Someone else broke into the apartment in 2006 and damaged the front door. Tracy and her children caused additional damage to the front door and to the bathroom door when they threw a shoe at the bathroom door, a computer fell over and struck the door, and Tracy's daughter struck the door with a toy. As to Tracy's missing purse, she claimed she misplaced it and later found it in her car. Tracy denied that defendant had taken anything of hers.

Defendant's mother, Elizabeth Ulloa, testified she never told defendant to return Tracy's wallet and money. Elizabeth also denied returning them to Tracy. Defendant never gave them to her. Elizabeth also denied she told Dodson defendant was living alone at the time of the incident or that defendant had caused damage to the apartment. Elizabeth testified that Tracy called her and told her to lie and tell the investigator defendant had given Elizabeth the money, and Elizabeth gave it back to Tracy. Elizabeth lied to the investigator because Elizabeth panicked when the investigator called right after Tracy.

## 2. Burglary Conviction

Defendant contends the trial court should have granted his section 1118.1 motion for judgment of acquittal on the ground the apartment lease was a complete defense to burglary. At the time of the charged burglary offense, there was in effect an apartment lease signed by both defendant and Tracy as cotenants. At the expiration of the one-year lease term in January 2007, the lease had converted from a one-year lease to a month-to-month lease.

■ Even assuming defendant had a possessory interest in the apartment under the lease at the time of the charged crimes, this was not a complete defense to the burglary charge because there was substantial evidence he had

moved out of the apartment prior to the crimes and therefore no longer had an unconditional possessory interest in the apartment unit.

 Under section 459, a burglary is committed when a person "enters any house, room, apartment, tenement . . . or other building, . . . with intent to commit grand or petit larceny or any felony . . . ." (§ 459.)

In the instant case, defendant's burglary conviction was founded on evidence defendant broke into the apartment and took Tracy's purse and $900 from her wallet. Citing *People v. Gauze* (1975) 15 Cal.3d 709 [125 Cal.Rptr. 773, 542 P.2d 1365] (*Gauze*), defendant argues he did not commit burglary because he was a cotenant on a valid lease to the apartment and thus he could not burglarize his own home. (*Id.* at pp. 714, 717.) But *Gauze* is distinguishable. In *Gauze*, the defendant shared an apartment with two other roommates. The defendant and one of his roommates got into an argument and the defendant left the apartment to get a gun. The defendant then returned to the apartment, walked in, and shot the roommate. The defendant's burglary conviction was predicated on the defendant's entry into his own residence with the intent to assault his roommate.

In reversing the burglary conviction, the *Gauze* court explained that a burglary conviction under section 459 requires "an entry which invades a possessory right in a building" (*Gauze, supra,* 15 Cal.3d at p. 714) and it "must be committed by a person who has no right to be in the building" (*ibid.*; see also *People v. Smith* (2006) 142 Cal.App.4th 923, 930 [48 Cal.Rptr.3d 378] [4th Dist., 2d Div.] (*Smith*); *People v. Gill* (2008) 159 Cal.App.4th 149, 159 [70 Cal.Rptr.3d 850] (*Gill*)). The defendant in *Gauze* had a possessory right of habitation and his right to enter was absolute. (*Gauze, supra,* at p. 714.) The *Gauze* court distinguished *People v. Sears* (1965) 62 Cal.2d 737, 746 [44 Cal.Rptr. 330, 401 P.2d 938] (*Sears I*), in which the husband and wife had separated and the husband was staying in a hotel. The wife was living in a home, which she owned as separate property. (*Ibid.*; *People v. Sears* (1970) 2 Cal.3d 180, 182–184 [84 Cal.Rptr. 711, 465 P.2d 847] (*Sears II*).) In *Sears I*, three weeks after separating and moving out, the defendant entered the wife's home through an unlocked door, with a concealed steel pipe. While looking for his wife, the defendant encountered the wife's daughter and killed her.

In *Sears I*, the court reversed the burglary conviction based on instructional error but also rejected the defendant's contention that he could not be convicted of burglary because he had a right to enter the house. The *Sears I* court explained: "One who enters a room or building with the intent to commit a felony is guilty of burglary even though permission to enter has been extended to him personally or as a member of the public. [Citation.] The

entry need not constitute a trespass. [Citations.] Moreover, since defendant had moved out of the family home three weeks prior to the crime, he could claim no right to enter the residence of another without permission. Even if we assume that defendant could properly enter the house for a lawful purpose (cf. Civ. Code, § 157), such an entry still constitutes burglary if accomplished with the intent to commit a felonious assault within it." (*Sears I, supra*, 62 Cal.2d at p. 746.)

The *Gauze* court concluded *Sears I* was not dispositive because in *Sears I* the defendant had no right to enter the wife's house and, even if he had a right to enter, it was conditional: "An entry for anything but a legal purpose was a breach of his wife's possessory rights, in marked contrast to the entry in [*Gauze*]." (*Gauze, supra*, 15 Cal.3d at p. 715; see also *People v. Davenport* (1990) 219 Cal.App.3d 885, 891–892 [268 Cal.Rptr. 501] (*Davenport*).) Unlike defendant in the instant case, the *Gauze* defendant had an unconditional possessory interest in the apartment unit. Here, even assuming defendant had a possessory interest under the lease, he did not have an unconditional possessory interest in the apartment unit at the time of the incident because he had separated from his wife and moved out.

As in the instant case, in *Davenport*, the defendant was convicted of receiving stolen property and first degree burglary for entering his estranged wife's home, which was a cabin owned by her parents. The *Davenport* court noted that "To sustain a burglary conviction, the People must prove that a defendant does not have an unconditional possessory right to enter his or her family residence." (*Davenport, supra*, 219 Cal.App.3d at p. 892.)

The *Davenport* court upheld the burglary conviction, concluding there was substantial evidence that the appellant did not have the right to enter the cabin or, alternatively, that any such right was conditional based on the following circumstances: The defendant and his wife had been separated for months prior to the burglary; the wife continued to live at the cabin and the defendant lived elsewhere; the defendant had relinquished his keys to the cabin and had already removed some of his personal property; the wife had instructed him not to take his remaining personal property unless she was present; though no dissolution or legal separation proceeding had been filed when the burglary occurred, serious difficulties in the marital relationship existed; the wife did not have an ownership interest in the cabin but only a tenancy at will. (*Davenport, supra*, 219 Cal.App.3d at pp. 887–889.)

■ The *Davenport* court concluded under such circumstances, the defendant's right of entry under Civil Code former section 5102 (now Fam. Code, § 753), which provided that neither spouse could be excluded from the other's dwelling, was qualified to a lawful purpose. (*Davenport, supra*, 219

Cal.App.3d at p. 892.) Thus, the defendant was not entitled to enter the cabin without permission or for an unlawful purpose, even though there was no formal decree of divorce. (*Ibid.*)

We acknowledge *Davenport* is factually distinguishable to the extent that, in *Davenport*, the cabin was owned by the wife's parents, and the wife was a tenant at will, whereas in the instant case defendant and Tracy were signatories to a one-year lease, which had converted to a month-to-month tenancy. While defendant may have had a legal interest in the apartment under the lease, he did not own the property, and his possessory interest was not unconditional due to abandoning his unconditional possessory interest in the apartment by moving out. (*Davenport, supra*, 219 Cal.App.3d at p. 892.)

In *Smith, supra*, 142 Cal.App.4th 923, the defendant argued that even though there was a TRO (temporary restraining order) and order removing the defendant from the family home, he should not have been convicted of burglary for entering his family home in which he owned a coequal interest. (*Id.* at p. 929.) This court in *Smith* rejected the defendant's argument and affirmed the burglary conviction, concluding the defendant did not have an unconditional possessory right to enter the family residence due to the court order giving the wife temporary sole possession to the home. (*Id.* at p. 931.) We explained in *Smith* that a possessory right has a different meaning in criminal law than in family law. " 'The possessory right protected by section 459 is the "right to exert control over property to the exclusion of others" or, stated differently, the "right to enter as the occupant of that structure." ' " (*Smith, supra*, 142 Cal.App.4th at p. 932.)

This court in *Smith* also stated that in order to convict a spouse of burglary for entering the residence of the other spouse, "there must be a danger that arises from one spouse's mere entry into the family home." (*Smith, supra*, 142 Cal.App.4th at p. 933.) We concluded in *Smith* such a danger was present based on the defendant's history of spousal abuse, the existence of a TRO, and the defendant's use of force in entering the home with intent to commit a crime. (*Ibid.*)

The People argue *Gill, supra*, 159 Cal.App.4th 149 is factually on point and dispositive even though there was no TRO or order removing the defendant from the family home. In *Gill*, the defendant and his wife were having marital problems. In accordance with his wife's request, the defendant moved out of the family home and gave his wife his keys to the home. A day

later, the defendant broke into the family home and threatened, assaulted, sexually abused, and kidnapped his wife. The court in *Gill* upheld the defendant's burglary conviction, explaining that "Although the aforementioned cases [*Smith, supra,* 142 Cal.App.4th 923; *Gauze, supra,* 15 Cal.3d 709; and *Sears I, supra,* 62 Cal.2d 737] are factually dissimilar to this case in that T.G. did not have a court order granting her sole possession of the family home, was denied an emergency protective order, and defendant had only been out of the house for one day and evening, we believe the facts are within the principles enunciated in the *Sears* [*I*] and *Smith* cases. . . . By voluntarily leaving the house, giving up his house keys . . . , and heeding the directives of T.G. to stay out of the family home, defendant waived his unconditional right to enter the home. By obtaining the house keys voluntarily from defendant, T.G. exerted possessory control over the family home to the exclusion of others, specifically defendant. [Citation.] Defendant's subsequent conduct demonstrated that he gave up his right to possessory interest in the house and understood he did not have the right to enter the residence at will." (*Gill, supra,* 159 Cal.App.4th at p. 161.)

The *Gill* court added that "Here, as in *Smith,* the occupants of the family home were estranged, there had been prior threats to the safety of the victim and there had been incidents of spousal abuse. The victims feared for their safety. [Citation.] It is clear in these circumstances that danger *did* arise from the mere entry of defendant into his former home." (*Gill, supra,* 159 Cal.App.4th at p. 161.)

Here, there was evidence defendant and Tracy were estranged and separated due to having serious marital problems; defendant had voluntarily moved out of the apartment; defendant had committed prior domestic violence against Tracy; and Tracy feared defendant. Also, because defendant yelled at Tracy from outside the apartment at 5:00 a.m. and broke in, a reasonable inference could be drawn that defendant no longer had a key to the apartment and entered without Tracy's consent, with intent to commit theft or some other crime. Under such circumstances there was sufficient evidence supporting a finding that defendant did not have an unconditional possessory interest in the apartment. We thus conclude the apartment lease did not constitute a complete defense to burglary and there was sufficient evidence supporting defendant's burglary conviction.

3.–7.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante,* page 601.

### 8. Disposition

The judgment is affirmed.

Ramirez, P. J., and King, J., concurred.

A petition for a rehearing was denied January 12, 2010, and appellant's petition for review by the Supreme Court was denied April 14, 2010, S179570. George, C. J., did not participate therein.