Filed 2/26/15  P. v. Gallion CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GARY MICHAEL GALLION et al.,<br><br>    Defendants and Appellants. | D066361<br><br><br>(Super. Ct. No. FSB1201452) |

APPEAL from judgments of the Superior Court of San Bernardino County, Michael A. Smith, Judge.  Judgment against Cone affirmed; judgment against Gallion affirmed as modified.

Arthur B. Martin, under appointment by the Court of Appeal, for Defendant and Appellant Gary Michael Gallion.

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant Laurie Jean Cone.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa A. Mandel and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

Gary Michael Gallion and Laurie Jean Cone (together, Defendants) appeal from judgments entered upon their convictions for residential robbery, first degree burglary, and murdering Laurie's husband, John Joseph Cone.  The jury found true two special circumstances, namely that the murder was committed during the commission of a robbery and a burglary.  The jury also found Laurie guilty of two counts of solicitation to commit murder.  Defendants assert a number of issues on appeal.  Laurie contends (1) the special circumstance findings must be stricken because the verdict forms did not specifically reference the special circumstances and the jury did not expressly find that she, as an aider and abettor, either intended to kill or acted with reckless indifference to human life, and (2) the trial court erred by failing to instruct the jury sua sponte that a person cannot be guilty of burglarizing one's own residence and instead providing a contrary instruction.  Gallion argues (1) the felony murder special circumstance as applied to him, the actual killer, is unconstitutionally vague, and (2) the trial court erred in imposing a parole revocation restitution fine because his sentence does not include a determinate term.  The Attorney General concedes, and we agree, that the trial court erred in imposing a parole revocation restitution fine on Gallion.  Accordingly, we modify the judgment against Gallion to strike the parole revocation restitution fine.  In all other respects, the judgments are affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Defendants do not challenge the sufficiency of the evidence to support their convictions. Accordingly, we summarize the facts to provide background for their contentions on appeal.

Laurie and John lived together since 1985 and were married in 2001. They had a daughter together, Jacklyn Cone. Laurie had a gambling problem, which caused tension in her marriage.

In 2007 and 2012, Laurie solicited Jacklyn's boyfriend and an acquaintance to kill John. Neither individual acted on the requests. By mid-March 2012, Laurie had moved out of the residence she shared with John. John changed the locks to keep her out.

In April 2012, Laurie went to Shawna Bayless's home to have Bayless create a fake check for her. Gallion was at Bayless's home during that time. Laurie complained to Bayless that John would not give her any clothes or money. At that point, Gallion asked Laurie if she wanted John robbed and the two began discussing details of the robbery. Laurie drew Gallion a diagram of how to get into the house, told him about valuable items in the house, and detailed the home's video surveillance. Laurie told Gallion not to kill John.

Later that evening, Laurie picked Jacklyn up from John's house to get Jacklyn "out of there so [Gallion] could do what he had to do." When they returned to John's house, Laurie and Jacklyn found the outside gate and back door open. They proceeded inside the house and found it was ransacked with items thrown around and guns were missing.

Jacklyn called the police. When the police arrived, they found John's body in the bedroom. John was dead and had been badly beaten.

Police recovered several items from John's home in a dumpster, including his DVR. Surveillance video from the DVR captured much of what took place on the night of the murder. The perpetrator on the video had a tattoo similar in appearance and location to a tattoo which Gallion had on the back of his neck. Gallion and the perpetrator on the video also both had tattoos on their legs.

## DISCUSSION

### I. *Special Circumstance Findings*

A. Additional Background

The trial court instructed the jury with CALCRIM No. 703, regarding the intent required for an accomplice when the felony murder special circumstance is charged. That instruction provided the following:

> "If you decide that a defendant is guilty of first degree murder but was not the actual killer, then, when you consider the special circumstance of murder during the commission of a robbery or a burglary, you must also decide whether the defendant acted either with intent to kill or with reckless indifference to human life.

> "In order to prove these special circumstances for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove either that the defendant intended to kill, or the People must prove all of the following:

> "1. The defendant's participation in the crime began before or during the killing;

> "2. The defendant was a major participant in the crime;

> "AND

4

"3. When the defendant participated in the crime, she acted with reckless indifference to human life.

"A person acts with reckless indifference to human life when he or she knowingly engages in criminal activity that he or she knows involves a grave risk of death.

"[¶ . . . ¶]

"If the defendant was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that she acted with either the intent to kill or with reckless indifference to human life and was a major participant in the crime for the special circumstances of murder during the commission of a burglary or robbery to be true.  If the People have not met this burden, you must find these special circumstances have not been proved true for that defendant."

The trial court provided the jury with verdict forms, which stated, "We, the jury . . . , find the allegation in Count 1 that in the commission of the above offense that the murder of John Joseph Cone was aided and abetted by defendant LAURIE JEAN CONE, while the said defendant was an accomplice in the commission of the crime of burglary in the first and second degree to be: [true or not true]."  The verdict form for the special circumstance related to robbery was the same except for substituting "robbery" for "burglary."  The jury found both special circumstances true.

B.  Analysis

Laurie contends the special circumstance findings must be reversed because the verdict forms did not specifically reference the special circumstances or the applicable Penal Code sections, and the jury did not expressly find that she, as an aider and abettor, either intended to kill or acted with reckless indifference to human life.  She further

5

contends that the jury's failure to make specific findings resulted in a violation of her constitutional rights under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*). We reject these arguments.

Penal Code section 190.2, subdivision (a)(17), provides for a sentence of death or life in prison without the possibility of parole where "[t]he murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of" a robbery or burglary. (Undesignated statutory references are to the Penal Code.) To impose this sentence on an aider and abettor, as opposed to the actual killer, the aider and abettor must have either intended to kill or acted with reckless indifference to human life. (§ 190.2, subds. (c), (d).)

"[A] criminal jury has the right to return a general verdict which does not specify how it applied the law to the facts, or for that matter, what law was applied or what facts were found." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 599.) The jurors are "to reach a conclusion as to whether or not the charged special circumstance is true by applying legal principles on which they are instructed to the evidence presented to them." (*People v. Davenport* (1985) 41 Cal.3d 247, 274 (*Davenport*).)

In *Davenport*, the jury found true the special circumstance of murder involving the infliction of torture. (*Davenport*, *supra*, 41 Cal.3d at p. 273.) On appeal, the defendant complained that the torture murder special circumstance finding was insufficient because the verdict form failed to specify the jury's finding of two "essential elements" of that special circumstance, namely that the murder was intentional and involved infliction of extreme pain. (*Ibid*.) The verdict form for the special circumstance required only that

6

the jury record its ultimate conclusion that the circumstance was true. (*Ibid*.) Our Supreme Court rejected the defendant's argument, concluding the jury need only find the special circumstance is true and it is unnecessary to find the facts on which that determination is based. (*Id.* at pp. 273-275.)

Similarly, in *People v. Lobato* (2003) 109 Cal.App.4th 762 (*Lobato*), the defendant was charged with being "substantially involved" in a conspiracy relating to the sale, transportation or possession of methamphetamine that exceeded four kilograms by weight. The verdict form in *Lobato* omitted a specific finding that the defendant was "substantially involved" in the conspiracy, and Lobato argued that the lack of a finding of substantial involvement constituted reversible error. The *Lobato* court rejected the defendant's argument because the jury had been instructed that the defendant must have been "'substantially involved'" in the conspiracy. (*Lobato*, at pp. 765-766.) The court stated that, "where the jury is fully instructed as to each element of the enhancement, it is not necessary for the verdict to enumerate each of those elements. [Citation.]" (*Id.* at p. 766.)

Here, we see no reason to depart from the holdings in *Davenport*, *supra*, 41 Cal.3d 247, and *Lobato*, *supra*, 109 Cal.App.4th 762. Laurie concedes the jury was "properly and accurately" instructed with "what it was required to find in order to return a true finding as to the burglary and robbery special circumstance allegations." The jury found both special circumstance allegations to be true. While the verdict forms did not require specific findings as to whether Laurie intended to kill John or acted with reckless indifference to human life, those findings were not required. (See *Davenport*, at pp. 273-

7

275; *Lobato*, at p. 766.) The jury only needed to find the special circumstances to be true and did not need to expressly make a finding as to each element where, as here, it was properly instructed as to each required element. (*Lobato*, at p. 766.) Moreover, we reject Laurie's contention that the verdict forms were inadequate because they did not reference that they pertained to the special circumstance allegations. The verdict forms were clearly labeled with "First Special Circumstance as to Count 1" and "Second Special Circumstance as to Count 1."

Lastly, we reject Laurie's argument that the jury's failure to make specific findings resulted in a violation of her constitutional rights under *Apprendi, supra*, 530 U.S. 466. As stated in *Lobato*, *supra,* 109 Cal.App.4th at p. 767, *Apprendi* "does not purport to require any written findings which expressly detail every element of an enhancement. It requires only that the jury find, beyond a reasonable doubt, every element of a sentence enhancement." Here, the trial court properly instructed the jury on the elements of the special circumstance allegations. We presume the jury followed the instructions and made the required findings as instructed. Accordingly, there was no *Apprendi* violation.

## II. *Alleged Instructional Error*

The trial court instructed the jury with the elements required to find Defendants guilty of burglary. The trial court went on to instruct the jury that "[a] spouse is not permitted to commit or aid and abet a theft either by robbery or burglary against another spouse, even if they have a legal right to the property that was taken." The prosecutor went on to argue that "one spouse cannot take the property from another spouse, either

8

through theft or through robbery or burglary, even if they have a legal right. Even if they can say, 'Hey, you know, that's 50 percent mine, or whatever.'"

Citing *People v. Gauze* (1975) 15 Cal.3d 709 (*Gauze*), Laurie argues the trial court erred by failing to instruct the jury sua sponte that a person cannot be guilty of burglarizing one's own residence and instead providing a contrary instruction. We reject this argument.

"'In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case.'" (*People v. Anderson* (2011) 51 Cal.4th 989, 996-997.) This duty may include giving to the jury the essential elements of a charged offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 155.)

In *Gauze*, the defendant entered his apartment and shot his roommate. (*Gauze*, *supra*, 15 Cal.3d at p. 711.) The *Gauze* court concluded he could not be convicted of burglary because a person cannot burglarize his or her own home. (*Id*. at p. 714.) The court underscored that the defendant "had an absolute right to enter the apartment . . . that could not be conditioned on the consent of [his] roommates[;] [he] could not be 'refused admission at the threshold' of his apartment, or be 'ejected from the premises after the entry was accomplished.'" (*Ibid*.) *Gauze* is easily distinguishable from the instant case as Laurie did not have an unconditional right to enter the premises nor to instruct a third party to enter it for an unlawful purpose.

This case is similar to *People v. Sears* (1965) 62 Cal.2d 737 (*Sears*). In *Sears*, the evidence showed that a husband had moved out of the family home three weeks before

9

reentering the home with the intent to assault his wife. (*Id.* at pp. 740, 745.) The *Sears* court held the husband's conduct could constitute burglary because he could not claim a right to enter the residence without permission as he had moved out three weeks before. (*Id.* at p. 746.) Additionally, the *Sears* court noted that the entry for burglary need not be a trespass, and that "[o]ne who enters a room or building with the intent to commit a felony is guilty of burglary even though permission to enter has been extended to him personally or as a member of the public." (*Ibid.*) *Sears* concluded that even if the husband had a right to enter the home for a lawful purpose, his "entry still constitute[d] burglary if accomplished with the intent to commit a felonious assault within it." (*Ibid.*; see also *People v. Pendleton* (1979) 25 Cal.3d 371, 382 [burglary occurs even if defendant entered with consent if defendant does not have "unconditional possessory right to enter"]; *People v. Smith* (2006) 142 Cal.App.4th 923, 929-932 [husband subject to court order not to enter family home after he assaulted his wife could be convicted of burglary of home]; *People v. Davenport* (1990) 219 Cal.App.3d 885, 892 [husband who had moved out of family cabin, relinquished key, and removed some of his property could be convicted of burglary of cabin].)

Here, the evidence clearly established that Laurie had moved out of the home she shared with John. Moreover, John had changed the locks to keep her out. There is also evidence in the record that suggests Laurie did not have any possessory interest in the residence. For example, Laurie readily admitted that she did not own the residence; rather, it was held in trust for Jacklyn. Under these circumstances, once Laurie moved out, she no longer had the right to enter the premises without John's permission.

10

Even if Laurie had the right to enter the premises, she did not have the right to enter to commit a crime or to instruct someone else to commit a crime on the premises. As explained in *Gauze* regarding the analogous situation of entry into a store: " '[A] party who enters with the intention to commit a felony enters without an invitation. He is not one of the public invited, nor is he entitled to enter. Such a party could be refused admission at the threshold, or ejected from the premises after the entry was accomplished.' . . . [A] person has an implied invitation to enter a store during business hours for legal purposes only." (*Gauze*, *supra*, 15 Cal.3d at p. 713.)

There is no evidence in the record to suggest that Laurie gave Gallion permission to enter John's residence for a lawful purpose. Laurie did not seek to retrieve her belongings; rather, she instructed Gallion to rob her husband and told Gallion where to find a safe that held several handguns and approximately $7,000 to $9,000. There is no indication that the safe or the items therein belonged to Laurie. Accordingly, she did not have a right to enter the premises or give anyone else permission to enter to retrieve those items.

Based on the foregoing, we see no error in the trial court's failure to instruct the jury that a person cannot burglarize her own home, or with the trial court's instruction that "[a] spouse is not permitted to commit or aid and abet a theft either by robbery or burglary against another spouse, even if they may have a legal right to the property that was taken." The trial court's instructions squarely comported with the law. Thus, we reject Laurie's claim of instructional error.

11

III. *Constitutionality of Felony Murder Special Circumstance as Applied to Gallion*

Gallion argues the felony murder special circumstance as applied to him, the actual killer, is unconstitutionally vague because there is no meaningful distinction between first degree felony murder and the felony murder special circumstance, it lacks sufficient definiteness, and gives the prosecutor unfettered discretion to choose which crime to charge. We reject Gallion's arguments.

A penal statute is unconstitutionally vague if it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." (*Kolender v. Lawson* (1983) 461 U.S. 352, 357.) Challenges to statutes on grounds of vagueness that do not threaten First Amendment interests are examined in light of the facts of the case at hand, and "the statute is judged on an as-applied basis." (*Maynard v. Cartwright* (1988) 486 U.S. 356, 361.)

"All murder which is perpetrated . . . by any other kind of willful, deliberate, and premeditated killing . . . is murder of the first degree." (§ 189.) The penalty for first degree murder is death, life imprisonment without the possibility of parole, or imprisonment for a term of 25 years to life. (§ 190, subd. (a).) In contrast, the penalty for murder committed with specified special circumstances is death or life imprisonment without the possibility of parole. (§ 190.2, subd. (a).)

As Gallion recognizes, this Court rejected his arguments in *People v. Andreasen* (2013) 214 Cal.App.4th 70, 79 (*Andreasen*). In that case, the defendant asserted a constitutional challenge to the felony murder special circumstance statute. Like Gallion,

12

the defendant in *Andreasen* claimed that as applied to the actual perpetrator of the killing, the felony murder offense (§ 189) is indistinguishable from the felony murder special circumstance (§ 190.2, subd. (a)(17)). Thus, the defendant asserted, he had no way of anticipating whether he would be subjected to the possibility of death or life in prison without parole as opposed to life with the possibility of parole, and the prosecutor had unfettered discretion to select the charge. (*Andreasen*, at p. 79.)

After reviewing the pertinent statutes, this Court stated, "These statutes provided defendant with notice that if he commits a statutorily specified felony and kills someone during that felony, he could be subjected to a sentence of 25 years to life with the possibility of parole, life without parole, or death. Defendant had notice as to the proscribed conduct and potential punishment." (*Andreasen*, *supra*, 214 Cal.App.4th at p. 80.) In *Andreasen*, this Court also rejected defendant's contention that section 189 and section 190.2, subdivision (a)(17) are indistinguishable, stating, "[T]he felony-murder offense is established merely upon a showing that the defendant killed during the commission or attempted commission of the felony, whereas the felony-murder special circumstance requires an additional showing that the intent to commit the felony was independent of the killing." (*Andreasen*, at p. 80.)

"The mere fact that the prosecution has discretion to select which punishment it will seek does not render a statute unconstitutionally vague or create an improper risk of arbitrary enforcement of a criminal statute." (*Andreasen*, *supra*, 214 Cal.App.4th at p. 80.) "The courts have repeatedly rejected constitutional challenges to the imposition of the special circumstance punishment on the direct killer, even though the statute can

13

operate to punish a felony murderer who kills unintentionally more harshly than a simple murderer who kills intentionally." (*Id.* at p. 81.)

We see no reason to depart from the reasoning and conclusions in *Andreasen*, *supra*, 214 Cal.App.4th at pp. 79-82. Based on the special circumstance statute, Gallion had notice that if he committed a statutorily-specified felony and killed someone during that felony, he could be subjected to a sentence of life without the possibility of parole or death. The prosecutor's discretion to select the charge against Gallion does not render the felony murder special circumstance unconstitutional. "The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause." (*United States v. Batchelder* (1979) 442 U.S. 114, 125.) Lastly, the felony murder special circumstance is not unconstitutionally vague as there is a meaningful distinction when compared to first degree felony murder, namely that the special circumstance requires an additional showing that the intent to commit the felony was independent of the murder. (*Andreasen*, at p. 80.)

Based on the foregoing, Gallion's constitutional vagueness challenge lacks merit.

### IV. *Gallion's Parole Revocation Restitution Fine*

The trial court sentenced Gallion to life without the possibility of parole for John's murder and stayed his sentences for the robbery and burglary. The trial court imposed a parole revocation restitution fine of $10,000 pursuant to section 1202.45. Gallion argues the trial court erred in imposing the parole revocation restitution fine because his sentence does not include a determinate term and therefore does not include a period of

14

parole.  The Attorney General concedes, and we agree, that the trial court erred in imposing the fine.

A parole revocation restitution fine is not applicable in cases where, as here, the defendant's sentence includes a term of life without the possibility of parole.  (*People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1185.)  Accordingly, we modify the judgment against Gallion to strike the parole revocation restitution fine.

DISPOSITION

The judgment against Laurie Cone is affirmed.  The judgment against Gallion is modified to strike the $10,000 parole revocation restitution fine under section 1202.45.  As so modified, the judgment against Gallion is affirmed.  The trial court is directed to amend Gallion's abstract of judgment to reflect this modification and to forward a copy to the Department of Corrections and Rehabilitation.

McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

McDONALD, J.